[No. 1775, August 7, 1915.]

ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY v. LOPEZ, County Treasurer.

### SYLLABUS BY THE COURT.

1. The classification of counties, as incorporated in chapter 11, Laws of 1899, commonly known as the "Bridge Law," as amended by chapter 56 of the Laws of 1909, is not special legislation, in contravention of the so-called Springer Act (Act July 30, 1886, c. 818, 24 Stat. 170), and levies made thereunder are valid.          P. 595

2. **Held,** that section 2 of chapter 11 of the Laws of 1909 is invalid, as in contravention of the Springer Act, in that it provides for a numerical classification of counties, without basis therefor, and by purely arbitrary designation.

P. 595

3. While illegal tax levies may be enjoined, no injunction, preliminary or final, should be granted until it is shown that all the taxes conceded to be due, or which the court can see ought to be paid, or which can be shown to be due by affidavit, have been paid or tendered without demanding a receipt in full.          P. 598

4. Section 657, Comp. Laws 1897 (section 1155, Code 1915), authorizes the levy of an amount sufficient to satisfy any judgment obtained against a county, or any county officer in an action prosecuted by or against him in his official name.

P. 599

Appeal from District Court, Santa Fé County; Mechem, Judge.

Suit by the Atchison, Topeka & Santa Fé Railway Company against Celso Lopez, Treasurer and Collector of Taxes. From a judgment for complainant, defendant appeals. Reversed, and cause remanded.

FRANK W. CLANCY, Attorney General; ALEXANDER READ, District Attorney, and A. M. EDWARDS, Assistant District Attorney, for appellant.

The court erred in holding the bridge law unconstitutional.

Secs. 1, 2 and 3, chapter 11, Laws 1899; sec. 1, c. 60, Laws of 1897 (sec. 867, C. L. 1897) ; Guthrie National Bank v. Guthrie, 173 U. S. 528; Codlin v. Co. Com., 9 N. M. 567; Territory v. Cutinola, 4 N. M. 305; Territory v. Beaven, 15 N. M. 357; Sears v. Fewson, 15 N. M. 132; Smith v. Judge, 17 Cal. 554; Lewis-Suth. Stat. Const. (2d Ed.) 351.

An act providing for a new system of compensation for county officers repeals all prior laws on the subject.

Lew. Suth. Stat. Const. 255; Commonwealth v. Mann, 168 Pa. St. 290; Commonwealth v. Allegheny County, 168 Pa. St. 308.

In construing a statute words may be restricted or enlarged according to the intent with which they were used.

Lewis-Suth. Stat. Const., sec. 378.

Continual and long acquiscence in and recognition of the validity of the classification law of 1897 and the bridge law are factors to be considered by the court.

Lewis-Suth. Stat. Const. 477, 489; Wetherington v. District Court, 142 Pac. (Nev.) 230.

Statutes will be construed as to prevent hardships and absurdities.

Lewis-Suth. Stat. Const., sec. 490.

A., T. & S. F. Ry. Co. v. Lopez, 20 N. M. 591.

The county commissioners, independent of these statutes, had the general and express authority to make the levies under sub-sec. 11 of section 664, C. L. 1897.

The judgment levy was legal.

Sec. 657, C. L. 1897; c. 108, Laws 1909; U. S. Trust Co. v. Territory, 10 N. M. 431; Territory ex rel. v. Bd. Co. Coms., 14 N. M. 134.

W. C. REID of Albuquerque and R. E. TWITCHELL of Santa Fé, for appellee.

The classification law of 1897 ((sec. 1, chapter 60, Laws 1897) upon which the bridge act is based, made no provision for its future operations, and such acts, without exception, have been universally condemned.

Julian v. Model B. L. L. & L. Assn., 116 Wis. —; Lewis' Sutherland on Statutory Construction (2d Ed.), sections 199, 203 and 214; Thomas v. Austin, 103 Ga. 701, 30 S. E. 627; Codlin v. County Commissioners, 9 N. M. 565; Holt v. Mayor, etc., of Birmingham, 19 South. 735 (Ala.); Alexander v. City of Elizabeth, 28 Atl. Rep. 51 (N. J.); Territory v. Baca, 6 N. M. 420.

The holding of Guthrie National Bank v. Guthrie, 173 U. S. 528, does not mean that the Legislature may violate one of the constitutional inhibitions.

If appellant's contention that the classification act is valid is correct, the levy would raise more than the amount permitted by statute.

There must be distinct authority for making a levy.

1 Cooley on Taxation, 546; 27 Am. & Eng. Enc. Law, 730.

Where a portion of a tax is illegal, a sale of the property for such tax is void, although a part of the tax is valid.

Gage v. Pumpelly, 115 U. S. 454; McLaughlin v. Thompson, 55 Ill. 249; Gage v. Goudy, 141 Ill. 215; Drake v. Ogden, 128 Ill. 603.

"Whatever preliminaries are by law made essential to the levy of a tax must be observed or the tax will be void."

Cooley on Taxation, vol. 1, p. 562; 37 Cyc. 971; Couper v. Rowe, 42 Ga. 299; Huntington v. Central Pac. Ry. Co., 2 Sawyer, 503; State Auditor v. Jackson Company, 65 Ala. 142; Hughes v. Reis, 40 Cal. 255; Hitchen v. Smith, 101 Penn. 452; Chicago, B. & Q. Ry. Co. v. People,.213 Ill. 458; Nelson v. Oklahoma City, etc., 104 Pac. 42; Ventimiglea v. Eichner, 140 N. Y. 401.

### STATEMENT OF FACTS.

The Atchison, Topeka & Santa Fé Railway Company, plaintiff in the court below, brought this action to restrain the collection by Santa Fé county of certain taxes levied for the year 1912. In its first cause of action the railway company sought to defeat the collection of two levies for the construction of certain bridges in said county upon several grounds; the only one, however, which is before this court for consideration, being based upon the contention that both of said levies were made under the provisions of chapter 11 of the Laws of 1899, as amended. This law, commonly known as the "Bridge Law," is alleged to be a special law in conflict with the act of Congress approved July 30, 1886, commonly known as the Springer Act. This being the only question passed upon by the trial court, it will be the only question considered by this court in passing upon this, the first cause of action, and the first question presented.

The second cause of action was based upon allegel illegal levies for courthouse building purposes, and as to this cause of action the court found against the plaintiff, and no appeal has been taken from such finding, so that the same presents no question for our determination.

The third cause of action, however, is predicated upon an alleged illegal and void levy of 1½ mills for the year 1912 for the county judgment fund. By stipulation of the parties, it appears that this levy covered two judgments, one rendered in cause No. 6392 in the district court of Santa Fé county for $344.43, and one in cause No. 6728 in the same court for $4,046.91, on certain interest coupons of Santa Fé county bonds. The trial court found that, at the time said judgment levy was made, judgment had not been entered in cause No. 6392, and that the judgment in No. 6728 was not for current expenses, and that the levy was therefore illegal and void. A perpetual injunction was entered in the district court, restraining the appellant, as treasurer and collector of Santa Fé county, from selling or offering for sale the property of the plaintiff, and from taking any action for the enforcement or collection of taxes against the plaintiff under the levies referred to in the first and third causes of action of plaintiff's complaint. From the final judgment of the district court, and perpetual injunction thereby granted and allowed, this appeal was taken.

### OPINION OF THE COURT.

HANNA, J.—(after stating the facts as above.)—**1, 2**] The first question presented for our consideration is the alleged invalidity of chapter 11 of the Laws of 1899, known as the "Bridge Law." The question is raised by numerous assignments of error, which will not be separately noted. The contention, however, upon which these several assignments of error are based, is that, because chapter 11 of the Laws of 1899 adopted the classification of the counties of New Mexico as made by section 1 of chapter 60 of the Laws of 1897 (to be found immediately following section 697, C. L. 1897), which classification is invalid, as violative of the Springer Act, the so-called "Bridge Law" is invalid. The facts upon which this contention is made are substantially as follows: At the time the "Bridge Law" was adopted in 1899, the only classification of counties in the territory of New Mexico was that

incorporated in the act of 1897, which classified counties numerically as the first, second, third, and fourth classes. This classification was not based upon any difference in the counties, but was purely an arbitrary one, without any basis therefor pointed out in the act itself, and not based upon any facts which this court could judicially notice as forming a basis for the classification of the counties such as would justify a contention that the act was general legislation, and not local or special in its character. This question has been fully considered and passed upon in a recent opniion of this court, not yet officially reported, that of State of New Mexico v. A., T. & S. F. Ry. Co., 151 Pac. 305, in which case we held, under a similar state of facts, that a legislative act which adopted the alleged classification of 1897 was invalid because in contravention of the Springer Act. Our conclusion in the case referred to would be decisive of this issue in the present case, were it not that a somewhat different state of facts is presented. In 1905 the Legislature passed an act to regulate the classification of counties, and fixing the salaries of certain county officials thereof, which appears as chapter 60 of the Laws of 1905. This act clearly superseded the numerical classification of chapter 60 of the Laws of 1897, so far as in conflict therewith, and it is argued that this classification should be substituted for the classification referred to and adopted by the "Bridge Law" of 1899. By the 1905 act counties were divided into classes, A. B. C. D, and E; the classification depending upon the amount of taxes remitted to the territorial treasurer annually.

With this contention, however, we cannot agree, and there is not apparent any legislative intention to provide for the substitution which, it is argued, should be considered as a result of the legislation referred to. It does appear, however, that the Thirty-Eighth Legislative Assembly, by chapter 56 of the Laws of 1909, passed an act amendatory of the so-called "Bridge Law" of 1899, by the terms of which the classification of counties as A. B, C, D, and E was, in our opinion, specifically made a part of chapter 11 of the Laws of 1899. While it is true that

the reference to the classification of counties alphabetically, as indicated, has to do only with the amount of taxes to be levied and assessed in the several counties of the state, and providing limitations upon the amount to be levied in any county in any one year, nevertheless the reference to the classification, which undoubtedly points to the classification of the act of 1905 (chapter 60) does clearly evidence an intention of the Legislature to have the classification under said act of 1905 apply to the so-called "Bridge Law," and is in fact an incorporation of that classification, in our opinion, into the act in question. Chapter 56 of the Laws of 1909, amending chapter 11 of the Laws of 1899, was in full force and effect at the time of the levy for bridge purposes in Santa Fé county in the year 1912, which levy is now questioned in this suit, and, if the classification of the act of 1905 was therefore a part of the act of 1899, the bridge levies of Santa Fé county were valid levies at the time made, unless other considerations, to be noticed, may render them invalid.

The first point in this connection urged by appellee is that the levy would be invalid, because it would raise more money than the statute permitted. It is unquestioned, as a general proposition, that excessive tax levies may be enjoined. 2 Cooley on Taxation (3d Ed.) 1445; Binkert v. Jansen et al., 94 Ill. 283. But the rule is not without its limitations. It has been generally held that where a part of the tax levy is valid, and another part void, the valid part must be tendered before equitable relief can be granted. Miles, Treas., v. Ray, 100 Ind. 166; City of Delphi v. Bowen, 61 Ind. 29; B. & M. R. R. Co. v. Saunders County, 16 Neb. 123, 19 N. W. 698; Whitney National Bank v. Parker (C. C.) 41 Fed. 402; State Railroad Tax Cases, 92 U. S. 617, 23 L. Ed. 663; McPherson v. Foster Bros., 43 Iowa, 48, 22 Am. Rep. 215; Lewis v. Boguechitto, 76 Miss. 156, 24 South. 875; Birdseye et al. v. Village of Clyde et al., 61 Ohio St. 27, 55 N. E. 169; Wells v. Western Paving & Supply Co., 96 Wis. 116, 70 N. W. 1071. While our attention has not been directed to any case, nor has our own research discovered one, directly in

point, we believe that the state of facts involved in the present case is analogous to those of the cases cited, where the purpose of the levy was authorized, but the legal limit was exceeded, and the excess only was enjoined. We fully appreciate that the excess must be an ascertainable quantity; but, if ascertainable by computation and without proof, the amount should be determined by the court, and payment required, before granting relief against the excess. Wells v. Western Paving & Supply Co., supra.

[3] We therefore conclude that, while illegal tax levies may be enjoined, no injunction, preliminary or final, should be granted until it is shown that all the taxes conceded to be due, or which the court can see ought to be paid, or which can be shown to be due by affidavit, have been paid or tendered without demanding a receipt in full. State Railroad Tax Cases, 92 U. S. 575, 23 L. Ed. 663. It might be argued by appellee, in this connection, that this conclusion is outside the issues made by the briefs filed in this court; but it is to be borne in mind that this is a case like that of First National Bank of Raton et al. v. Thos. McBride, Treasurer of Colfax County, 149 Pac. 353, recently decided, in which case we pointed out that a controversy of this character, growing out of tax questions, was not an ordinary controversy between private persons, but the question involves "a proper understanding of the law of taxation as it is to be administered in this state, and the question is one of general public interest, in which the state at large is concerned," for which reason it is not to be permitted that the narrow issues of a case as framed should result in the announcement of a rule for the future guidance of the taxing officers, which might, as in this case, result in declaring the invalidity of a law which otherwise must be declared valid, and under which numerous levies may have been made in many counties of the state, and affecting many thousands of taxpayers—a result which cannot be justified upon any theory that the rights of an individual taxpayer are paramount to that of the public in the administration of the taxation laws of the state.

[4] The further contention is made by appellee that the bridge levy cannot be sustained because, by the stipulation, made a part of the record in this cause, it appears that Santa Fé county must necessarily fall within class C, and that under the provisions of section 2 of chapter 11 of the Laws of 1899, providing that petitions for the construction of bridges should be signed by at least 200 taxpayers in counties of the third class, which must be understood as meaning counties of class C, the condition was not complied with, and that therefore the levies are invalid, because the required number of signers to said petition had not been secured. It is to be observed that chapter 56 of the Laws of 1909 did not amend section 2 of the act of 1899, and the condition thus presented is that section 2 provides for counties designated numerically, whereas section 3, as amended by the 1909 act, provides for counties designated alphabetically. As we have pointed out in this opinion, this court has held in the case of State of New Mexico v. A., T. & S. F. Ry. Co. that the numerical classification of chapter 60 of the Laws of 1897, as referred to in the "Bridge Law" of 1899, was in contravention of the Springer Act, because without any basis for the classification, and therefore invalid. The same reasoning applied in that case would, of course, apply in the consideration of section 2 of chapter 11 of the Laws of 1899. We must therefore hold that the section in question is invalid, as in contravention of the so-called Springer Act. The result is simply, in our opinion, that this section providing for the number of taxpayers who should sign petitions, and so much of section 1 as refers to the number of taxpayers required on said petitions, and section 1, chapter 8, Laws of 1909, amending the same, would likewise be invalid. By subsection 11 of section 664, C. L. 1897, it is provided that the county commissioners "may order and direct the construction of bridges, and provide and appropriate funds therefor." It is therefore to be observed that there has been vested in boards of county commissioners the power to order the construction of bridges, and under our holding and conclusion ar-

rived at they may do so without the petitions contemplated by the act of 1899 until the Legislature makes different provision therefor.

Our conclusion in the matter of the bridge levy by Santa Fé county for the year 1912 makes it necessary to reverse the judgment of the district court. It is necessary, however, to consider the remaining assignments of error, which deal entirely with the question of the legality of a judgment levy for the same year, which was made the subject of attack by the third cause of action in plaintiff's complaint.

The court found as to the third cause of action, which is that based upon the legality of the judgment levy, that at the time of the assessment against the plaintiff for the year 1912 of the tax for the payment of judgments against the county of Santa Fé the only unsatisfied judgment of record against said county was that in cause No. 6728, which had been obtained on account of interest coupons of past-due and defaulted bonds of said county, and was not for the current expense of the county, and that at the time said levy was made the judgment in cause No. 6392 had not been rendered against the county, and upon these grounds made his restraining order. The inquiry into this question leads to the consideration of two statutes, the first being section 657 of the Compiled Laws of 1897, which appears as section 1155 in the Code of 1915. The statute reads as follows:

"When a judgment shall be rendered against any board of county commissioners of any county, or against county officers in an action prosecuted by or against him in his official name, where the same shall be paid by the county, no execution shall issue upon said judgment, but the same shall be levied and paid by tax as other county charges, and when so collected shall be paid by the county treasurer to the person to whom the same shall be adjudged, upon the delivery of a proper voucher therefor."

The other statute involved in the inquiry is section 1 of chapter 108 of the Laws of 1909, which is included in the Code of 1915 as section 1339, and is as follows:

"When any final judgment has been or may be rendered against any county, on account of any current expenses of such county, the board of county commissioners at the time of making the first annual levy thereafter in such county may, in their discretion, cause to be levied and collected and may make such levies and collections annually thereafter until a sufficient tax to pay such judgments and costs of suit shall have been levied and collected: Provided, that such levy shall not exceed two mills upon each dollar of taxable property for any one year and the proceeds from such levy shall be kept separate and apart from other county funds and credited to a fund to be known as the judgment fund. And the moneys collected hereunder shall not be used for any purpose except as hereinbefore provided and no levy shall be made except where such judgments are outstanding."

It is evident that the first statute quoted above was either not called to the attention of the trial court, or was by that court considered as having been impliedly repealed by the later act of 1909, and that the trial court did not consider the later act of 1909, which, it is to be observed, was limited to judgments obtained for current expenses, as having application to the particular judgment which was outstanding as a judgment against the county of Santa Fé, at the time the levy was made by the board of county commissioners. It is clear, however, in our opinion, that the first act is in full force and effect, general in its nature, and applying to all judgments which shall be rendered against any county, whereas the act of 1909 is limited to judgments rendered against any county for current expenses; it having been evidently the intention of the Legislature, in the enactment of this law, to limit the levies for payment of judgments of this class to two

mills upon the dollar of taxable property. It is argued, however, by appellee, that the first act is not sufficient as a legislative grant of power to levy taxes to meet judgments obtained against a county; that the authorization to levy a judgment is meaningless, or that, if it has any meaning, the judgment must be paid out of the tax which has been authorized for other county charges. In other words, the county commissioners were possessed, by other statutory provisions, of authority to levy up to 5 mills for general county purposes, and the fund so created is the fund out of which the judgment must be paid, unless elsewhere can be found some special authority to levy for the satisfaction of a judgment of this character. Appellee further contends that the only other authority to be found is that contained in chapter 108 of the Laws of 1909, which authority is limited to judgments rendered for current expenses. We cannot agree with this contention, but are of the opinion that the first act (section 657, C. L. 1897, as it appears as section 1155, in the Code of 1915) authorizes the county to levy the amount of the judgment and we so hold.

Our conclusion in this respect makes it necessary to reverse the district court in its holding that the judgment levy was void, because as to the one judgment, that in cause No. 6728, there was authority under the statute in question to make a levy. It appears from the stipulation filed in the district court that the judgment levy in question was made to satisfy two judgments for sums certain, viz., that of the judgment obtained in cause 6392 for $344.43, and that obtained in cause 6728 for $4,046.91, so that the amount of this levy which is properly sustainable is a mere matter of mathematical computation, which the plaintiff below should be required to pay before an injunction against the void portion of the levy should be made perpetual. Therefore the cause should be remanded, for the purpose of arriving at the amount properly to be assessed against plaintiff, and the injunction then made perpetual as to the void portion of the levy, upon condition that the valid portion be paid by plaintiff. In ar-

riving at this conclusion we do not overlook appellee's contention that, because a portion of the levy was unauthorized, that the entire levy is void, and the sale thereunder should be restrained. If the valid portion of the levy could not be severed from the void portion, we would agree that this contention is correct; but under the circumstances of this case we cannot hold with appellee's contention.

In this connection it is clear that the taxing authorities had legal right to make a levy to satisfy the judgment in cause No. 6728, and, having included in that levy the judgment in cause No. 6392, they have in effect made an excessive levy, and the amount of the excess can be computed from the stipulation filed herein. Therefore this phase of the case is determined by what we have had to say upon the first question presented and considered in this opinion upon the subject of excessive levies, where, as we have pointed out, equity will only grant relief as to cases where the excess is not ascertainable, and will require payment of the legal portion of the levy before granting relief as to the illegal or invalid portion.

For the reasons stated, the judgment of the district court is reversed, and the cause remanded, with instruction to modify the judgment in accordance with this opinion; and it is so ordered.

PARKER, J., concurs.

ROBERTS, C. J., being absent, did not participate in the decision.