49 P.(2d) 246

**BARKER, Mayor, et al. v. STATE ex rel. NAPOLEON.**

No. 4149.

Supreme Court of New Mexico.

Aug. 30, 1935.

Earl D. Kenney, of Santa Fe, for plaintiffs in error.

Reed Holloman, of Santa Fe, for defendant in error.

BRICE, Justice.

Relator applied for an alternative writ of mandamus against the respondents to compel the levy and collection of a tax to pay a judgment based upon a tort, in favor of relator against the city of Santa Fé. An alternative writ was issued by the district court to which an answer was filed admitting the facts alleged, but denying that there was legal authority for issuing a peremptory writ of mandamus alleging: "That the City of Santa Fe, through its City Council has the discretionary power to levy taxes for general

purposes up to a limitation of five (5) mills on the dollar of assessed valuation of property located in said municipality; that the City of Santa Fe will require all monies to be raised by taxes under such limitation for its 1935 municipal current expenses." And alleged further, in substance, that the respondents had no power or authority under any law to levy a tax to discharge the judgment in question.

The district court held that the relator was entitled to the relief prayed for and thereupon issued a peremptory order commanding the respondents in their several official capacities to do the things necessary and required by law to levy and collect taxes sufficient to pay said judgment and to pay the same to the relator. A writ of error has been sued out in this court to review the final judgment of the district court entered in said cause. The parties will be referred to as relator and respondents.

The case was tried upon the writ and answer. Without stating more of the allegations of the writ than is necessary to determine the case, it is alleged, after preliminary allegations with reference to the official positions of the respondents, that on the 19th day of June, 1933, the relator recovered a judgment in the sum of $8,700, with interest thereon at the rate of 6 per cent. per annum from the date of the judgment, together with costs, against the city of Santa Fe, which judg-ment is still in full force and effect and no part has been paid; and commanding the several respondents in their official capacity to perform the necessary official acts to the end that a tax be levied and collected for the payment of such judgment and that it be paid.

The parties agree that the sole question to be determined is whether or not there is legal authority for the levying of such tax; all of the proceeds of the levy of a tax of 5 mills on the dollar, the maximum rate authorized under section 141-1001, Comp. St. 1929, being required by the city for municipal current expenses. In other words, Is there authority in the Constitution or laws of the state to levy a tax to pay the judgment in question other than section 141-1001, Comp. St. 1929? It is agreed that, under the facts, no part of the 5-mill levy can be used for such purpose.

Respondents contend that if relator's judgment is paid at all, it must be paid from a tax levy as limited by section 141-1001, Comp. St. 1929; that as all the funds which can be obtained from such levy are needed to pay the ordinary expenses of the city, there can be no fund provided to pay such judgment at this time. The material parts of that statute are: "The maximum rate of tax to be levied for city, town or village purposes or uses shall not exceed five (5) mills on the dollar. * * * The foregoing lim-

itations shall not apply to levies for the payment of the public debt or interest thereon; Provided, further, that the limitations herein contained shall not apply to tax levies authorized by the fifth legislature and exempted from similar limitations in existing laws."

On the other hand, relator contends that the limitation statute has application solely to taxes levied to provide funds for ordinary current expenses and does not include judgments for torts; that the city is authorized to make such levy under its general authority to levy taxes and pay debts.

■■ Chapter 133 of the Session Laws of 1921, among others, had the following section (section 302), now appearing in the Comp. St. of 1929, as follows: "141-302. On or before the first Monday in September of each and every year the city council or board of trustees of any city, town or village, shall make and order a levy of taxes for all municipal purposes, and certify the same to the county commissioners. Such levies shall conform to and be within the budgets or estimates for such year as approved by the state tax commission and shall be within the limitations as to rate of levy as provided by law." The latter was amended as above in 1925 (Laws 1925, c. 102, § 14). Chapter 140 passed at the same session (1921) is the limitation act in question, now appearing in Comp. St. 1929 as sec-

tion 141-1001; the material parts of which have been quoted. That such statutes have reference to the ordinary municipal expenditures incurred in carrying on business, enacted to protect the public against extravagance and waste where expenditures are discretionary, and not as to items definitely fixed by law and not specifically included, or judgments for torts, or like items over which the officials of municipalities have no control; has been the view expressed by the great majority of decisions where the question was an issue.

"Sec. 278. There is a considerable conflict of authority upon the question as to how far a constitutional limitation upon municipal indebtedness applies to obligations imposed upon municipal corporations by law as distinguished from those which are discretionary or voluntary. It is universally agreed that limitations upon municipal indebtedness do not apply to obligations sounding in tort, and that it is not a defense to an action of tort against a municipal corporation that a judgment for the plaintiff will increase the indebtedness of the defendant beyond the constitutional limit. * * *" 19 R. C. L. p. 981.

It is unnecessary to quote from authorities, but we cite the following: Mayor, etc., of Anniston v. Hurt, 140 Ala. 394, 37 So. 220, 103 Am. St. Rep. 45; State ex rel. Pyle v. University City et al., 320 Mo.

451, 8 S.W.(2d) 73; State ex rel. Coolsaet et al. v. City of Veblen, 58 S. D. 451, 237 N. W. 555; Lewis v. Widber, 99 Cal. 412, 33 P. 1128; Dawson County v. Clark et al., 58 Neb. 756, 79 N. W. 822; Little v. City of Portland, 26 Or. 235, 37 P. 911; Heyman & Bro. v. Bath et al., 58 Cal. App. 499, 208 P. 981; Morris v. Sheridan, 86 Or. 224, 167 P. 593; Town of Flagstaff v. Gomez, 29 Ariz. 481, 242 P. 1003; Metropolitan. Life 'Ins. Co. v. Deasy, Auditor, et al., 41 Cal. App. 667, 183 P. 243; State ex rel. Keck v. City of Sunnyside et al. (Wash.) 43 P.(2d) 621; Conner v. City of Nevada, 188 Mo. 148, 86 S. W. 256, 107 Am. St. Rep. 314; Burr v. Board of Supervisors of City and County of San Francisco, 30 Cal. App. 755, 159 P. 458; City of Long Beach v. Lisenby, Mayor, et al., 180 Cal. 52, 179 P. 198; State ex rel. Pool v. City of Willow Springs (Mo. Sup.) 183 S. W. 589; City of Bloomington v. Perdue, 99 Ill. 329; Rice v. Walker, 44 Iowa, 458; Menar v. Sanders, 169 Ky. 285, 183 S. W. 949, L. R. A. 1917E, 422. Also see annotations in 94 A. L. R. at page 937, the headnote of which is as follows: "The general rule is that constitutional or statutory limitations upon municipal indebtedness or upon the amount of municipal taxation refer only to obligations voluntarily incurred by the municipality, and do not apply to its obligations sounding in tort."

There are a number of cases holding that a limitation on indebtedness does not apply to judgments for tort upon the same reasoning. Chase County v. Chicago, B. & Q. Ry. Co., 58 Neb. 274, 78 N. W. 502; Thomas v. City of Burlington, 69 Iowa, 140, 28 N. W. 480; City of Bloomington v. Perdue, 99 Ill. 329; City of Chicago v. Sexton, 115 Ill. 230, 2 N. E. 263.

The Supreme Court of Missouri in State of Missouri ex rel. Emerson v. City of Mound City, 73 S.W.(2d) 1017, 1022, 94 A. L. R. 923, decided last year, has overruled the Missouri cases we have cited. The Missouri Constitution, after fixing a maximum rate, continued, "said restrictions as to rates shall apply to taxes of every kind and description, whether general or special, except taxes to pay valid indebtedness now existing, or bonds which may be issued in renewal of such indebtedness." Const. Mo. art. 10, § 11. The court in that case stated: "That the limitation contained in section 11, article 10, of the Constitution as to the annual rates of taxation which may be levied for municipal purposes is self-enforcing and applicable to 'taxes of every kind and description, whether general or special,' with no exceptions whatever, except the ones made by the section of the Constitution itself not applicable here, has been held many times by this court, and it

makes no difference that the debt is valid or a judgment had been rendered."

From reading the previous decisions, it would seem that exceptions had been made for many years, though the language of the Constitution is positive and may justify the change, but it is quite different from the New Mexico act. Three of the eight judges of that court dissented. Courts of the state of Texas are likewise an exception to the majority. Gould v. City of Paris, 68 Tex. 511, 4 S. W. 650; City of Clarendon v. Betts (Tex. Civ. App.) 174 S. W. 958; City of Sherman v. Smith, 12 Tex. Civ. App. 580, 35 S. W. 294.

It follows that the limitation on the tax rate of cities in section 141-1001, Comp. St. 1929, has no reference to the levying of a tax to pay a judgment for tort.

(2) But respondents contend that the city has no authority except section 141-1001, Comp. St. 1929, for levying a tax to pay relator's judgment, and therefore no tax levy can be made. But the statute just mentioned is a limitation on the taxing power, not a grant of it. Unless authority can be found elsewhere in the statutes or the Constitution, then it does not exist; for a municipality can do no act for which authority is not expressly granted or which may not be reasonably inferred from those conferred upon it. 6 McQuillen on Municipal Corporations (2d Ed.) § 323.

The power to tax and pay debts is given generally in the Comp. St. 1929 as follows:

"90-402. The city council and board of trustees in towns shall have the following powers: * * *

"Second. To appropriate money for corporate purposes only, and provide for payment of debts and expenses of the corporation.

"Third. To levy and collect taxes for general and special purposes on real and personal property."

"141-301. The city council or board of trustees of any city, town, or village, shall have power and authority to levy taxes upon taxable property within the limits of such city, town or village, subject to taxation for state or county purposes, in accordance with the laws of the state."

"90-201. Cities and towns organized as provided in this article shall be bodies politic and corporate, under such name and style as they may select at the time of their organization, and may sue, or be sued, contract, or be contracted with, acquire and hold property, real and personal * * * and have such other privileges as are incident to corporations of like character or degree, not inconsistent with the laws of the state."

The Territorial Supreme Court in Territory of New Mexico ex rel. Parker v. Mayor, etc., of Socorro, 12 N. M. 177, 76

P. 283, 284, compelled the city of Socorro to levy a tax to pay bonds though the tax rate required would exceed the maximum allowed by section 116, chap. 39, Laws 1884, which the court held did not apply to cities organized under the law repealed by that act. That act, as amended, is now section 90-406, Comp. St. 1929, and apparently has not been repealed unless it conflicts with section 141-1001, supra, and is as follows: "90-406. No city or town having a population of less than six thousand (6000), according to the last census, shall levy an annual tax in excess of ten mills for any purpose whatsoever, except, for interest on bonded indebtedness; and no city or town having a population according to such census of six thousand shall levy any such tax in excess of eleven mills, except for interest on bonded indebtedness."

. This is the only case at all similar among New Mexico decisions. It was claimed, as here, that all the funds authorized to be levied were needed to pay current expenses. The court stated: "But this judgment was rendered to compel the levy of a special tax to be used exclusively to pay the city's bonds and interest, and is wholly disconnected from any levy for current expenses. It does not attempt to appropriate any funds which are to be raised or could be used for current expenses." It seems that the court assumed that the city of Socorro was or-

ganized under the act of 1880, at which time there was no limitation on the authority of a city to levy taxes, and therefore section 90-406 did not apply. The effect of the decision is to hold that there being no limitation on the taxing power, the city could be compelled by mandamus to levy a tax to pay certain past-due bonds. The city also contended that the writ should not issue before judgment, but as the debt was not denied, the court held a judgment was not necessary to enforce payment. The only difference in the cases is that the Socorro Case was a contract debt while the one in the case at bar is in tort.

A similar question was before the Supreme Court of Arizona in Town of Flagstaff et al. v. Gomez, 29 Ariz. 481, 242 P. 1003, 1004. It was held that authority to levy a tax to pay a judgment was granted by the following provision of the Arizona Code: "The common council of every such town shall have control of the finances, and all the property, real and personal, belonging to the corporation; and shall likewise have power within the limits of the town * * * to appropriate money and provide for the payment of the debts and expenses of the town. * * *" Civ. Code 1913, par. 1831.

The court, in construing this statute, said:

"We are of the opinion that this paragraph not only gives the right but also

imposes a positive duty upon the common council of the town of Flagstaff to 'provide for the payment of the debts' of the town, including all outstanding judgments, as they are the highest possible evidence of just indebtedness.

"There are practically but two ways in which a municipality can properly raise money to pay its debts. One is by levying taxes directly therefor, and the other by issuing bonds, which in turn will have to be paid by taxes, so that in the long run it comes back to the levy of a tax. Since the duty of paying is specifically imposed on the town, we think by reasonable implication there goes with such duty the power to exercise the only possible method of fulfilling it, unless there is a special statutory prohibition."

It has certainly been assumed in this state that a city is authorized under the general provisions quoted, and correctly so we believe, to pay debts and to that end levy taxes within the constitutional and statutory limitations. No contention has been made by the appellant that the judgment should not be paid as provided in the order of the court, herein, if the levy can legally be made in excess of the 5 mills required for city purposes.

"The liabilities of a municipal corporation are an incident to and grow out of, the powers and duties conferred or exacted. It follows that if the corporation in the exercise of any of its powers or in the performance of any of its duties incurs, in contracts or in delicto, any liability whether it arises from express legislation or by implication, it cannot escape such liability unless relieved therefrom by some valid provision of law." 6 McQuillen on Municipal Corporations § 2773.

The city owes the debt and is authorized to levy sufficient tax to pay it. This being true, it becomes a duty and may be enforced by mandamus.

"If power is granted to a municipal corporation to levy taxes, the exercise of such power for legitimate purpose is a duty and can be compelled by those who would be injured by a neglect to tax. Power to levy taxes to pay debts or municipal expenses imposes the duty of exercising that power." 6 McQuillen on Municipal Corporations § 2536.

(3) Relator calls attention to section 7 of article 8 of the State Constitution, the material parts of which are as follows, "No execution shall issue upon any judgment rendered against * * * any incorporated city * * * or against any officer of any * * * incorporated city * * * upon any judgment recovered against him in his official capacity and for which the * * * incorporated city * * * is liable, but the same shall be paid out of the proceeds of a tax levy as other liabilities of * * * incorporated

cities * * * and when so collected shall be paid by the county treasurer to the judgment creditor," and urges with much force and reason that it is self-executing; that under its terms he is entitled to the peremptory writ of mandamus as granted by the trial court; that it requires the funds collected from the tax levy therein provided for, to be paid directly to the judgment creditor by the county treasurer and therefore necessarily intends a special tax levy; as the ordinary city funds are required to be turned over to the city by the county treasurer (section 141-417, Comp. St. 1929). It seems that the source of this section of the Constitution was an enlargement of section 7, chap. 1, of the New Mexico Session Laws of 1876, now section 33-3704, Comp. St. 1929. That it was adopted in a modified form from the laws of Colorado. Stoddard, Treasurer, v. Benton, 6 Colo. 508. Relator calls attention to the case of Atchison, T. & S. F. Ry. Co. v. Lopez, 20 N. M. 591, 151 P. 308, 311, in which this court construed section 33-3704, Comp. St. 1929, and stated in the opinion, "It is clear, however, in our opinion, that the first act [section 33-3704, Comp. St. 1929] is in full force and effect, general in its nature, and applying to all judgments which shall be rendered against any county," and that it was then held that the general county fund limited to a 5-mill levy was not the only source from which the judgment could be paid, but that the act as there construed authorized "the county to levy the amount of the judgment."

As we have found that relator is entitled to the writ as prayed for, we do not find it necessary to decide the constitutional question.

Finding no error in the record, the judgment of the district court is affirmed.

It is so ordered.

SADLER, C. J., and HUDSPETH, BICKLEY, and ZINN, JJ., concur.