63 P.(2d) 345

**In re ATCHISON, T. & S. F. RY. CO.'S TAXES IN EDDY COUNTY FOR 1933.**

**No. 4154.**

Supreme Court of New Mexico.

Dec. 7, 1936.

W. C. Reid and E. C. Iden, both of Albuquerque, for petitioner.

G. L. Reese, Jr., of Carlsbad, for respondents.

SADLER, Chief Justice.

This is an appeal from an order entered in a proceeding instituted by the Atchison, Topeka & Santa Fé Railway Company, as petitioner, in the district court of Eddy county to secure a correction of the tax rolls of said county for the year 1933, by striking therefrom a certain levy against all the property of petitioner. No one is named as defendant or respondent in the petition filed, but upon filing of the petition an order to show cause was issued against the district attorney for Eddy county, the county treasurer, and the Board of County Commissioners of said county, directing them to show cause why the relief prayed should not be granted.

All of the officials named appeared by the district attorney in response to the order to show cause by filing a demurrer to the petition. No action was taken upon the demurrer. Thereafter an answer was filed to which the petitioner demurred. The demurrer being overruled, petitioner prosecutes this appeal from the ruling as an interlocutory order which practically disposes of the merits of the proceeding.

Enough appears to dispose of a matter, raised by respondents (appellees), not urged as a ground of affirmance, but decisive nevertheless, if meritorious. They suggest (though disclaiming intention to rely upon same if it can be waived) a want of jurisdiction in this court to entertain the appeal. The doubt expressed upon the question of jurisdiction is this. They say the proceeding is one under the provisions of 1929 Comp. §§ 141-306 to 141-308, to correct taxes, and, because the petition fails to show it was filed with the approval of the district attorney, this court is without jurisdiction to entertain the appeal. As stated above, they avow a willingness to waive the jurisdictional question, if it can be waived, and expressly consent to a hearing on the merits.

While this indulgence on respondents' part is commendable, we find it unnecessary to rely upon same. If it be true, as they insist, that the proceeding is under the statute, we find in the statute (1929 Comp. § 141-308) express provision for an appeal. And, if approval of the district attorney be essential to initiating the proceeding, the failure to secure and show such approval would affect the original jurisdiction of the district court, not the appellate jurisdiction of this court. Actually, the statute makes it obvious that approval of the district attorney is not required through express provision for conducting the proceeding with-

out such consent. It provides: "Should the district attorney refuse to permit the filing of any such complaint without cost to the taxpayer such taxpayer may proceed thereon in his own name and at his own expense."

■ Viewed as a proceeding under the statute and in the absence of an affirmative showing to the contrary, we should have to presume, in support of the jurisdiction entertained by the trial court, that it became satisfied of the district attorney's refusal to permit the filing of the petition without cost to the petitioner. The appearance of said official as a respondent below resisting the relief claimed by petitioner leaves no doubt of his attitude toward the claim.

Petitioner, apropos the jurisdictional question suggested by respondents, lays no claim to benefit of the statute and the right of review provided thereby. It says its suit is equitable "in the nature of a suit to quiet its title or remove the cloud upon its title, by reason of the illegal tax remaining upon the assessment rolls." If so conceived in the beginning, the petition is but little adapted in form to what it is claimed to be in substance. It is entitled as above indicated. No parties defendant or respondent are joined or named, either in the caption or the body of the petition. From its form, it strongly suggests a proceeding under the statute. But with its filing reliance on the statute either by court or counsel appears to cease. No copy of the petition nor of the order to show cause was directed to or served upon State Tax Commission as required by the statute. .

Regardless of the chameleonic qualities possessed by the proceeding in the beginning, it emerges prior to the order complained of as a suit in equity, disclosing a subject matter of equitable cognizance (indeed, this it had in the beginning), with the parties necessary to an adjudication of the issue presented (petitioner and the county treasurer) before the court, properly aligned. Such a proceeding is a civil action (cf. Summerford v. Board of Com'rs, 35 N.M. 374, 298 P. 410) from judgments in which we may entertain appeals. Now to the merits.

The particular levy of which petitioner complains is a special one made for the purpose of satisfying two judgments rendered against the Board of County Commissioners of Eddy County in condemnation proceedings instituted for the purpose of acquiring rights of way for a state highway. Respondents' answer discloses that the total levy for general county purposes for 1933 approximated the five-mill limitation and that the special levy of .000155 made for the purpose of satisfying said judgments was made in addition to the total levy for general county purposes. However, the district court, in its order directing said levy, expressly exempts the same from the statutory five-mill limitation for all county purposes.

■ The sole question presented for determination, and raised by petitioner's demurrer to respondents' answer, is whether the special levy for the purpose mentioned is prohibited by the statutory limitation contained in 1929 Comp. § 141-1001. So far

as material, said section reads: "The maximum rate of tax to be levied for all county purposes and uses, excepting special school levies, general school tax levies, and special levies on specific classes of property, shall not exceed five (5) mills on the dollar; Provided, however, that a tax not exceeding two (2) mills on the dollar of the assessed valuation of all property subject to taxation in this state may be levied for the construction and maintenance of state highways, which said two (2) mills levy shall not be within the state or county limitations heretofore fixed. * * * The foregoing limitations shall not apply to levies for the payment of the public debt or interest thereon."

It is obvious that in condemning a right of way for the state highway in question the Board of County Commissioners was proceeding under the authority and compulsion of 1929 Comp. § 64-313. A major portion of the damages carried into each judgment was consequential, although in each instance the judgment covered damages for the taking. The county apparently sought no review of the condemnation decrees, and it is here immaterial whether the statute mentioned renders the county liable for consequential damages suffered by a defendant for the taking of property which the statute authorizes. For the purposes of this case it must be assumed that it does.

In Summerford v. Board of Commissioners of Dona Ana County, 35 N.M. 374, 298 P. 410, 412, we had before us the statute above mentioned. It provides that the several counties shall obtain and pay for rights of way for state highways. As stated in the case just cited, consequential damages are not mentioned in the statute, but as there observed, "the view * * * that they are comprehended is not without support in reason." We were spared the necessity of determining the question in that case by the county's admission that ordinarily its liability for damaging is the same as for taking.

We thus have before us a case where not only do the judgments for which the levy was ordered represent involuntary liabilities imposed by law but liabilities fixed in actions classified of necessity as ex delicto as distinguished from actions ex contractu. We think the case is enough like that of Barker v. State, 39 N.M. 434, 49 P.(2d) 246, 247, as to be controlled by it. We there held that the very statute, 1929 Comp. § 141-1001, here relied upon by petitioner as invalidating the levy challenged, did not apply to obligations sounding in tort. True, we were construing the five-mill limitation applicable to cities rather than that concerning counties. But both are contained in the same section of the statute and in practically the same language. Obviously the two limitation provisions do not carry different meanings.

In Barker v. State, supra, speaking of 1929 Comp. § 141-1001, we said: "Chapter 140 passed at the same session (1921) is the limitation act in question, now appearing in Comp.St.1929 as section 141-1001; the material parts of which have been quoted. That such statutes have reference to the ordinary municipal expenditures incurred

in carrying on business, enacted to protect the public against extravagance and waste where expenditures are discretionary, and not as to items definitely fixed by law and not specifically included, or judgments for torts, or like items over which the officials of municipalities have no control; has been the view expressed by the great majority of decisions where the question was an issue."

While, strictly speaking, the taking or injury to land by eminent domain is not a tort in the sense of a wrongful act, 10 R.C.L. 223, § 190, "Eminent Domain," nevertheless, as already indicated, proceedings in eminent domain are classified broadly as tort actions in contradistinction to actions ex contractu. As was said in Keller v. Scranton, 200 Pa. 130, 49 A. 781, 783, 86 Am.St. Rep. 708:

"The taking or injury to land by eminent domain is not a tort, in the sense of a wrongful act. When the broad distinction of actions into those ex contractu and those ex delicto was established, damages from the exercise of eminent domain were unknown. When they came into existence, they did not strictly fit into either class, but, as they were certainly not founded on express contract with the landowner, they were put in the only other class, as torts. But when, as, in the present case, the act which is called a 'tort' is done under a contract, and the assumption of the consequent damages is an express term of such contract, we have a perfectly clear case outside of the principle that makes municipalities liable for their wrongful acts, without regard to their indebtedness, and within the constitutional prohibition of a contractual obligation to pay in future for a consideration in the present."

In that case, as the quoted portion of the opinion indicates, the court declined to hold the damages recovered exempt from the constitutional debt limitation, but only so because the alleged tort was done under a contract by the express terms of which consequential damages were assumed by the city and agreed to be paid.

However, the Barker Case becomes even more persuasive in the light of the circumstance that, whether or not the judgments in question were recovered in actions correctly classified ex delicto, there can be no question that they represent (quoting from the opinion in the Barker Case) "items definitely fixed by law and not specifically included * * * or like items over which the officials * * * have no control." Certainly the obligations levied for are not contractual. As obviously they are involuntary. They represent no part of the ordinary current expenses incurred in carrying on the county business, to curb waste and extravagance in which, we said in the Barker Case, this and other similar statutory limitations have been enacted.

In thus emphasizing the involuntary character of the obligation, we are not unmindful that in Santa Fé Water & Light Co. v. Santa Fé County, 29 N.M. 538, 224 P. 402, as expressed in the syllabus pre-

pared by the court, we held: "The limitation against the payment of unpaid debts provided by the Bateman Act (sections 1227–1233, Code 1915) applies to debts created for necessities such as water and lights for use at a courthouse, or others which may be arbitrarily placed against a county or other municipality, with the same force as to those that may be voluntarily created by such county or municipality."

The court was there dealing with the Bateman Act (1929 Comp. § 33-4241 et seq.), long deeply imbedded in the declared public policy of this state. And so long as the obligation whose payment is sought to be coerced by mandatory levy classifies as an item of ordinary current expense of conducting county affairs in excess of its current income, it matters not whether the obligation be one arbitrarily placed against the county, as by imposition of law, James v. Board of Com'rs, 24 N.M. 509, 174 P. 1001; Sena v. Board of County Com'rs, 27 N.M. 461, 462, 202 P. 984; nor that it appears in the form of a judgment. The court will look behind the judgment to ascertain whether the claim is legally payable from the taxes sought to be levied. Atchison, T. & S. F. R. Co. v. Territory, 11 N. M. 669, 72 P. 14. This same reasoning employed in decisions dealing with the Bateman Act should hold by analogy when applied to the limitation statute under consideration. Nevertheless, when the true nature of the obligation is disclosed, whether reduced to judgment or not, if found not to be of a kind contemplated by the statute,

the latter presents no obstacle to a levy for its payment. Barker v. State, supra.

Respondents refer us to article 8, section 7, of our State Constitution, and 1929 Comp. § 33-3704, both restraining execution upon judgments against counties and authorizing payment of same by tax levies. Petitioner replies that neither of these provisions, even if that in the Constitution be deemed self-executing, constitutes a grant of power to override other constitutional or statutory limitations. Of course, no constitutional limitation is here involved. We had occasion to refer to these constitutional and statutory provisions in Barker v. State, supra.

We entertain no doubt that authority in the Board of County Commissioners to make the levy is to be found in 1929 Comp. section 33-3704. Atchison, T. & S. F. R. Co. v. Lopez, 20 N.M. 591, 151 P. 308. Petitioner says the decision in the Lopez Case is unfortunate and in direct conflict with Atchison, T. & S. F. R. Co. v. Territory, 11 N.M. 669, 72 P. 14, previously determined but unnoticed in the Lopez Case, and James v. Board of Commissioners of Socorro County, 24 N.M. 509, 174 P. 1001, subsequently decided, which relies upon Atchison, T. & S. F. R. Co. v. Territory without mention of the Lopez Case.

We do not find in these cases the conflict which petitioner seems to sense. In Barker v. State, supra, we referred to the Lopez Case and quoted approvingly from it. If the obligation involved in the Lopez case had been of a kind interdicted by the Bate-

man Act or by section 141-1001, had such limitation statute been then in force, there would be patent inconsistency between the Lopez and James Cases on the one hand and Atchison, T. & S. F. R. Co. v. Territory, on the other. The fact is, however, that at the time of the decision in the Lopez Case the limitation statute mentioned had not been enacted and the Bateman Act was not invoked. Apparently the contention made was that the levy to satisfy judgments on interest coupons of past-due and defaulted bonds of Santa Fé county was illegal because not for current expenses of the county which could be satisfied by the five-mill levy for that purpose authorized by Laws 1903, c. 108, § 9, now Comp.1929, section 33-5601. Two statutes were discussed as bearing upon the county's authority to make the 1½-mill levy required to satisfy the judgments involved, to wit, Code of 1915, § 1155 (now 1929 Comp. § 33-3704), and Code of 1915, § 1339 (now 1929 Comp. § 33-5602). The latter is limited in character, providing for a levy not exceeding two mills on the dollar to meet current expenses. The former was held to be general in nature and to furnish authority for so much of the levy as was necessary to satisfy the only one of the judgments which actually had been rendered prior to the levy.

It is obvious from the opinion in the Lopez Case that the obligation represented by the judgment levied for was not considered current expense. If current expense, the amount of the levy, 1½ mills, being well within the limitation of two mills inter-

posed in the statute authorizing levies to meet judgments rendered against counties on account of current expenses, there was no occasion for the court to rest warrant for the levy on section 33-3704 (Code of 1915, § 1155). Unquestionably this court, in reaching the conclusion it did in the Lopez Case (and whether correct in its classification of the obligation or not it is unimportant now to determine), necessarily held it to be of a kind entitled to satisfaction from the levy ordered. The court did not hold, as petitioner seems to contend, and in conflict with the cases cited, that the judgment could not be looked behind for ascertaining the true nature of the liability represented by it. It did hold that the judgment was not for current expenses, and necessarily held by sustaining the levy that the obligation was of a kind not affected by the implied limitation carried by Laws 1903, c. 108 (1929 Comp. § 33-5601) authorizing a levy of five mills for county current expenses. So viewed, we find no conflict with it.

The petitioner places its greatest reliance, aside from the conflict claimed to exist in our own decisions, upon the case of Grand Island & N. W. Ry. Co. v. Baker, 6 Wyo. 369, 45 P. 494, 34 L.R.A. 835, 71 Am. St.Rep. 926. We have carefully weighed this case, but consider the point ruled by our own decisions.

The conclusion reached upon the point discussed renders unnecessary a decision of other questions raised. It perhaps should be said that the language of the proviso in

§ 141-1001 exempting from the limitation of five mills "a tax not exceeding two (2) mills on the dollar of the assessed valuation of all property subject to taxation in this state," for construction and maintenance of state highways, is discussed by petitioner in anticipation of reliance thereon by respondents. They eliminate it from the case, however, by agreeing with petitioner that the proviso contemplates a state-wide levy by the state and not by a single county.

■ In what has been said, it is assumed in accordance with the theory upon which the case was tried below that the levy involved was for a "county purpose." The limitation imposed by § 141-1001 aforesaid is upon the rate to be levied by a county "for all county purposes and uses." This section, expressly excepting from the maximum rate imposed on state and county levies a levy of two mills "for the construction and maintenance of state highways," seems itself to carry statutory recognition, that a "state highway" is not a "county purpose." The broad powers conferred by the Legislature on State Highway Commission in the location, construction, and maintenance of state highways, would seem to remove the subject from the domain of mere county purposes.

Furthermore, 1929 Comp. § 64-313, requiring counties under the conditions set forth to obtain and pay for state highways, was enacted subsequently to the adoption of § 141-1001, imposing the five-mill limitation. In view of these considerations, it may well be doubted if the purpose of this

levy is actually a "county purpose" within the purview of the statute.

It follows from what has been said that the judgment of the district court in this cause should be affirmed.

It is so ordered.

HUDSPETH, BICKLEY, and BRICE, JJ., concur.

ZINN, J., did not participate.