146 P.2d 315

**McATEE v. GUTIERREZ et al.**

No. 4745.

Supreme Court of New Mexico.

Rehearing Granted and Opinion on Rehearing Filed Feb. 1, 1944.

Further Rehearing Denied March 15, 1944.

persons as members of the Sandoval County Board of Education, seeking to recover from said defendants $316.06 for roofing material furnished by his assignor to the said county board of education for repair of a particular school district of the county; no answer was filed and default judgment was taken for the amount claimed.

Upon failure to collect upon said judgment the within suit in mandamus was thereafter brought against all parties named in said original suit and, in addition, against those named herein as defendants and appellants (these to be hereinafter referred to as defendants). Upon the petition of plaintiff an alternative writ of mandamus was issued, to which an answer was filed by the State Tax Commission (all other defendants defaulting), setting up as a defense the Bateman Act (Secs. 7-607 to 7-613, incl., Comp. 1941) and the restrictions imposed by the School Budget Law, and pleading and relying upon the distinction here to be drawn by the law between tax liabilities of property only within a school district benefited, because of this being a direct charge against the district, and the non-liability of property within the county as a whole for the payment of such direct charges.

It must be admitted that the roofing material so sold could, under the budget act, properly be used only in the repair of a school building, or buildings, in a particular district, or districts. Judgment was given for plaintiff and defendants appealed, after the overruling of their motion to vacate and

George E. Remley, Richard M. Krannawitter, and Wm. J. Barker, all of Santa Fe, and Scott H. Mabry, of Albuquerque, for appellants.

Dailey & Rogers and Jethro S. Vaught, Jr., all of Albuquerque, for appellee.

MABRY, Justice.

The defendants below, who are the appellants here, have moved for rehearing and upon consideration of the motion, we withdraw our former opinion heretofore filed, substituting this one therefor.

Suit was filed on the 28th day of April, 1941, by W. Peter McAtee, appellee herein (but hereinafter to be called plaintiff), as assignee of the Surety Products Company, of Cleveland, Ohio, against certain named

set aside the peremptory writ so issued, on the ground of fundamental error.

The material was sold in October, 1938, and it was, therefore, under the Bateman Act, to be paid for, if at all, from the current tax collections of the fiscal year 1938–1939. The writ alleges "that there are no funds on hand or available for the payment of the judgment", etc.

■ As to the defense that to require a tax levy to pay the judgment so rendered would be violative of the Bateman Act, it need only be said that it is not enough merely to plead the act; but the burden rests upon the party relying upon it to both "plead and prove" its application. Landers v. Board of Education, 45 N.M. 446, 116 P.2d 690. If the Bateman Act were the sole defense of defendants it would have to be said that it affords no relief because it is not shown how its application here would defeat the claim. But their reliance is, as well, upon another and a controlling consideration, viz., that of the operation of the law known as the School Budget Act.

■ It must be conceded that this is not a liability of any other district than the particular school district which used the roofing material purchased; that it is a matter of direct charge recoverable only from the district for which the purchased material was allocated and used, and even from it, as against proper pleading and proof, only in the event that current revenues sufficient in amount to pay the bill were collected; that, therefore, an imposition of any part of the obligation to so pay on any district except the particular district, or districts, for which the material was purchased should not receive legal sanction. These propositions seem elementary and should require nothing further for support than their mere statement. Moreover, in view of the language of the statute expressly making such purchases for school house repairs direct charges against the particular district, and the limited authority to be exercised by the County School Board, which represents, in the capacity of agent, the individual school districts in making such purchases, it seems clear that a tax could be levied only upon the property of the taxpayers within the particular district benefited.

■ Plaintiff, as we understand him, does not question this contention excepting as the rule must be affected and limited by the fact that the county school board permitted the judgment to run against it because of its failure to keep proper books by which it might have been disclosed where the material was actually used; that this negligent method of book-keeping amounted, in law, to a tort, which would result in the imposition of liability upon the whole county. Such a contention would presuppose power in the school board to exercise county-wide authority, which it did not have, certainly not in the respect contended for; and, of course, it likewise presupposes the commission of a tort through faulty book-keeping methods,

which we are not, under the circumstances, prepared to concede, although that question is not decided.

■ The county board of education purchased the materials in question from plaintiff's assignor and he properly sued said board for recovery of the purchase price. See Sections 55-801, 55-807 and 55-808, Comp.1941. And, it will also be conceded, perhaps, that even if the seller, or plaintiff, had possessed knowledge of the rural school district to which the roofing material purchased had been allocated and used, he could not have maintained a suit directly against the board of directors of the particular district for the purchase price thereof. Thrall et al. v. Grant County Board of Education et al., 38 N.M. 358, 33 P.2d 908. The question here is not whether the county board may be sued for the obligation, but, rather, whether plaintiff has sought the appropriate remedy for its collection.

■ It is interesting to note that by the findings there were several rural school districts of the county with sufficient revenue individually budgeted and collected for school house repairs to pay for this purchase. Possibly one such district received and used the roofing material. If the county board of education, whose duty it is to know, had shown this fact, the judgment might have been paid without occasion for seeking a forced levy. But this fact does not affect the result. It is a complete answer to plaintiff's contention to 'say that as between the various school districts in the county only that one receiving and using the material may be required to pay.

We must look to some specific statutory authority by which we could do what the trial court undertook to do, viz., subject the property of the whole county to a tax levy to pay the obligation which, under the School Budget Act, is made a direct charge against the particular school district benefited.

The School Budget Act provides that repairs to buildings and equipment shall be a direct charge against the individual district, although we know that the cost of maintaining the teaching staff, transporting pupils to and from schools, etc., constitutes a general maintenance expense of the taxpayers not so specifically allocated. 1941 Comp., Sec. 55-603.

The School Budget laws in force in October, 1938, when the original indebtedness was incurred, are to be found in Art. 6 of Chap. 120, N.M.Comp.1929 (1941 Comp., Art. 6); Secs. 120-603 and 120-604 therein, were amended in 1931 and appear under the same numbers in the 1938 Supplement. Sec. 120-601, Comp.1929 (1941 Comp., Sec. 55-601) requires the School Budget Commissioners and the Educational Budget Auditor to fix budget allowances. Sec. 120-602, Comp.1929 (1941 Comp., Sec. 55-602) requires the governing school board to submit to the Budget Commissioners an "estimate of school maintenance and direct district charges."

Sec. 120-603, N.M.Supp.1938, preserves the distinction between maintenance or administrative expense funds, and direct district charge funds. Sec. 120-604, N.M. Supp.1938, defines what shall constitute the direct charges against the several districts in the following language: "District direct charge funds shall include property insurance, lease of school buildings, erection of school buildings, repair to school buildings and equipment, new equipment, purchase of school grounds, improvement of grounds and buildings, interest on and sinking funds for district school bonds, and may include transportation of pupils when necessary."

Section 120-617, N.M.Comp.1929 (1941 Comp., Sec. 55-625) reads as follows: "The district tax proceeds for direct charges shall be credited to each district from which collected, in a separate fund, and be disbursed upon the warrant or voucher of the governing authority of such district."

Section 120-618, N.M.Comp.1929 (1941 Comp. Sec. 55-626) contemplates that district funds shall be segregated and disbursed only for that particular district. Sections 120-612 (1941 Comp., Sec. 55-615) and 120-620, N.M.Comp.1929 (1941 Comp. Sec. 55-628) prohibit expenditures contrary to the budget allowance.

█ Such were the laws in effect when the roofing material was delivered, and petitioner's assignor was charged with constructive notice and knowledge thereof.

Then, as now, there was no warrant of law for paying out of the general county maintenance or administrative funds, a debt incurred as a direct charge against a particular district. Nor was there any authority of law to budget a direct charge save for a particular district or to levy a tax for the payment of a direct charge, save upon property within that particular district, and save within the budget allowance therefor. Any expenditure of monies for purposes contrary to the budget allowance therefor was, necessarily, prohibited.

It has been suggested that Sec. 7 of Art. VIII of the New Mexico Constitution affords ample authority for the payment of judgments through tax levy, and that the provision is self-executing. This section of the Constitution reads: "No execution shall issue upon any judgment rendered against the board of county commissioners of any county, or against any incorporated city, town or village, school district or board of education; or against any officer of any county, incorporated city, town or village, school district or board of education, upon any judgment recovered against him in his official capacity and for which the county, incorporated city, town or village, school district or board of education, is liable, but the same shall be paid out of the proceeds of a tax levy as other liabilities of counties, incorporated cities, towns or villages, school districts or boards of education, and when so collected shall be paid by the county treasurer to the judgment creditor."

Obviously, this provision of the Constitution cannot be relied upon for the enforcement of an unauthorized judgment; it, necessarily, presupposes a valid one. And, it cannot be said that this provision of the Constitution is self-executing and requires no legislative act for the establishment of the machinery of taxation for its proper operation.

There is, likewise, no merit to the contention that the judgment is res adjudicata, and that we cannot go behind it. The fact that the judgment upon the account was by default does not change the situation. The only issue tendered in the original suit on account was whether the county board of education owed the debt; and the only effect of the judgment was to determine that it did owe the debt. Any act of the board in attempting to purchase materials to be charged against the county as a whole, since its jurisdiction did not extend so far, would have been ultra vires and therefore void.

When the remedy of mandamus was thereafter, and in this suit now before us, sought to compel a levy against the property of the entire county to pay the judgment theretofore rendered, defendants appropriately urged that, notwithstanding the judgment against the board, no valid tax may be laid upon any property for the payment of the judgment except such as is authorized by law. The Legisislature determines against whom the charge shall lay, and determines what property shall be liable in tax therefor.

It is, obviously, necessary that before such a constitutional provision should operate that the Legislature provide the machinery for assessing, levying and collecting the tax. See Lannigan v. Gallup, 17 N. M. 627, 131 P. 997; State v. Perrault, 34 N.M. 438, 283 P. 902. So, when we look for legislative authority for the levy of a tax against the property of the entire county to pay a debt of this character, we find none; but on the contrary we do find, as hereinbefore shown, that the Legislature has determined that only the district benefited shall be called upon to pay any of the costs covered by these direct charge items.

It is not enough to say that the burden of education in any one or more districts of the county is the burden of the whole county, and that, therefore, it is immaterial that in circumstances such as this where the use of the material cannot be traced, that the taxpayers of all the county must be called upon to pay. The School Budget Act expressly provides a contrary method for the charging and liquidation of such direct charge expenditures.

A good deal of difficulty may be avoided when we notice that the county school board is not in fact a board representing the entire county. It has jurisdiction over rural schools only, which excludes the schools of municipalities and independent districts of their respective counties. As the agent of the several districts to so purchase and lay these direct charges it is not at the same time made agent for the pur-

pose of burdening all the taxpayers of the county, including those of municipalities and independent school districts, with the costs of these direct charge obligations which are by law expressly laid upon some particular rural school district.

If it were possible to so burden the property of the whole county for this direct charge item for repair, insignificant in itself, the rule would likewise apply if it were a more substantial amount, including even the construction of an entire new building. The Legislature has, very clearly, and, we cannot say inappropriately, provided specifically how and by whom such expenditures may be paid.

 It is a general rule of law that in a mandamus proceeding to enforce the payment of a judgment against a municipal corporation, the court may look behind the judgment to the debt, notwithstanding the merger, to determine the remedy provided by law for its enforcement. United States ex rel. Huidekoper v. Macon County, 99 U.S. 582, 25 L.Ed. 331; Atchison, T. & S. F. R. Co. v. Territory, 11 N.M. 669, 72 P. 14; James v. County Commissioners, 24 N.M. 509, 174 P. 1001; United States ex rel. Harshman v. County Court of Knox County, 122 U.S. 306, 7 S.Ct. 1171, 30 L. Ed. 1152.

Obviously, the only theory which would support a levy against the property of Sandoval county as a whole would be upon the assumption that the name "The Sandoval County Board of Education" implies that it is a "county board" in the larger sense, and as such, judgments against it, under the provisions of Article VIII of the Constitution heretofore noticed, could be enforced by a county-wide tax levy. As we have heretofore shown it is not a county board in that sense, and the New Mexico constitutional provision hereinbefore referred to is not self-executing. Although it can sue, and be sued, its authority does not extend so far as to permit it to suffer judgment as to a claim upon which the whole county (which it does not represent) could not be liable, and to thus indirectly secure to the creditor the right to enjoy the benefit of a county-wide levy of tax to pay it, which right it otherwise would not have.

Other questions raised need not be noticed. For the foregoing reasons the judgment is reversed, with direction to the trial court to discharge the writ, and, it is so ordered.

BRICE and THREET, JJ., concur.

SADLER, C. J., and BICKLEY, J., dissenting.

BICKLEY, Justice (dissenting).

On July 13, 1943 there was filed an opinion affirming the judgment of the lower court. Among other things, that opinion stated:

"It may be taken for granted and conceded, as defendants so vigorously urge, that this is not a liability of any other district than the particular school dis-

trict which used the roofing material purchased; that it is a matter of direct charge recoverable only from the district to which the purchased material was allocated and used, and even from it, as against proper pleading and proof, only in the event that current revenues sufficient in amount to pay the bill were collected; that, therefore, an imposition of any part of the obligation to pay on any district except the particular district which used the material is unjust and not to receive legal sanction. These propositions seem elementary and require nothing further for support than their mere statement. If the case were open for their application the result could not be in doubt. However, they cannot control the decision here because of a default by defendants in sustaining a burden of proof resting on them.

"The defense interposed by defendants was a violation of the Bateman Act, Sec. 7-607, Comp.1941. The defendants thus recognized a claimed violation of the Bateman Act as an affirmative defense and pleaded accordingly. No doubt they recalled what this court said in State ex rel. Chesher v. Beall, 41 N.M. 652, 73 P.2d 329, to-wit: 'We do not question the proposition advanced by respondents that the court may go behind the judgment for the purpose of determining on what account it was rendered. Atchison, T. & S. F. Ry. Co. v. Territory, 11 N.M. 669, 72 P. 14; Territory ex rel. Adair 'v. Board of County Commissioners, supra [12 N.M. 131, 75 P. 38]; In re Atchison, T. & S. F. Ry. Co.'s Taxes, supra [41 N.M. 9, 63 P.2d 345]. The fault with their position is that, erroneously conceiving the duty to rest upon relator to allege the judgement was not for current expense, they failed to file an answer alleging that it was.'

"Unfortunately for their position before us, however, they either failed to recall or were unadvised that in Landers v. Board of Education, 45 N.M. 446, 116 P.2d 690, we had held this burden to rest on a defendant as a mattter of proof as well as a matter of pleading. In that case the trial judge sought to inject the Bateman Act as a defense two months after the trial had closed. He both found and concluded that on account thereof the plaintiff's contract was void. In denying to the issue as thus raised any proper consideration in disposing of the case, we said: 'A violation of the Bateman Act is defensive matter and must both be pleaded and proved if to be relied upon.'

"Thus, as the mattter stood when the trial of the mandamus action closed, the defendants had properly assumed the burden of pleading a violation of the Bateman Act as an affirmative defense. This much of the burden resting on them had been met. In order to meet the burden resting on them as a matter of proof, they were called upon to introduce evidence establishing a violation of the Bateman Act. Even if they had been able to identify the particular rural district to which the roofing material sold was allocated, this burden was not yet sustained. They must go further and show by evidence that

the current revenues of said district were insufficient to pay this claim. In other words, identifying the particular district was but the first step required in the introduction of evidence necessary to be taken by defendants in meeting the burden of proof resting upon them. Thus through inability to identify the district using the material purchased, the defendants failed in the first of two essential steps in the order of proof required to sustain the burden resting upon them. So the matter appeared to the trial judge when he was called upon to render judgment. He said: 'In the opinion of this Court the Bateman Act is an affirmative defense, and the burden is upon the respondents to show that this judgment comes under the Bateman Act. It would, therefore, logically follow that respondent should be the one to show in which school district the roofing material was used and that said purchases were not within the revenues of the district, * * *'.

"We think the trial judge was correct under decisions of this court in the Chesher and Landers cases, cited supra. See, also, State ex rel. Martin v. Harris, et al., 45 N.M. 335, 115 P.2d 80. The county board of education purchased the materials in question from plaintiff's assignor and he properly sued said board for recovery of the purchase price. See Sections 55-801, 55-807 and 55-808, Comp.1941.

"Even if the seller, or plaintiff, had possessed knowledge of the rural school district to which the roofing material purchased had been allocated and used, he could not have maintained a suit against its board of directors for the purchase price thereof. Thrall v. Grant County Board of Education, 38 N.M. 358, 33 P.2d 908. It is interesting to note the showing in the findings and the evidence that there were several rural school districts with sufficient revenue budgeted and collected to pay for this purchase. Possibly one of them received and used the roofing material. If the county board of education, whose duty it is to know, had shown this fact, the judgment might have been paid without occasion for a forced levy.

"On the other hand, possibly some district with funds neither budgeted nor collected sufficient to pay the claim received and used the material. If the county board whose duty it is to know had shown this fact in meeting the burden of proof resting upon it, no order for a mandatory levy could properly have been made. But the proof is blank on the subject. It was the duty of defendants to supply the missing proof. In this they failed and judgment properly went against them.

"It is no answer to say that as between the various school districts in the county only that one receiving and using the material should be made to pay. As an academic proposition this is conceded at the outset of this opinion. We know that frequently default judgments go against those who, had they defended, could have defeated the claim. This is not to say whether or not had the board defended in

the first instance it could have defeated this particular claim; but it is to say that, now, in order to defeat it upon the alleged ground that to pay the judgment the Bateman Act would be violated, the burden to prove the violation rested upon defendants and this burden has not been sustained. The default here is one of proof.

"It has been suggested that there is no authority for the levy of a tax for the liquidation of such a judgment. But we find ample authority for such levy in Section 7 of Article VIII of the Constitution. Whether this provision of the Constitution is self-executing was a question presented and noticed, but not decided, in Barker v. State, 39 N.M. 434, 49 P.2d 246. We now hold it to be self-executing. Moreover, we find in Sec. 15-4304, Comp. 1941, like authority as far as it might apply to "any board of county commissioners" or "any county officer". See Atchison, T. & S. F. Ry. Co. v. Lopez, 20 N.M. 591, 602, 151 P. 308. Whether the statute is broad enough to authorize the levy in question we need not decide. Our reliance is solely upon the constitutional provision above cited. A mere reading suggests that this constitutional provision is an enlargement of the statute above referred to.

"The general rule is that, after judgment upon a claim preferred against a county, ordinary defenses which could have been, and were not, urged against the claim constitute no defense in mandamus proceedings to compel a levy of taxes to pay the judgment. 7 R.C.L. 967, sec. 41."

A majority of the court, upon what I think is a faulty understanding and statement of the issues, have now concluded to withdraw the former opinion and decision and to substitute the foregoing opinion and decision therefor.

The first fault I find in the present opinion of the majority is that they say at the outset that the original suit in which appellee obtained judgment he sought recovery for roofing material furnished by his assignor "to the said county board of education for repair of a particular school district of the county; no answer was filed and default judgment was taken for the amount claimed." The portion of the complaint with reference to the furnishing of the material is as follows: "That on or about October 25, 1938, plaintiff's assignor, The Surety Products Company of Cleveland, Ohio, at the special instance and request of the then constituted Sandoval County Board of Education furnished to said Board of Education certain materials reasonably worth the sum of $386.00."

The complaint is absolutely silent as to where the materials were to be used. The default judgment recited: "the allegations of the complaint are true."

Further on in the majority opinion this error is persisted in when it is said: "It must be conceded that this is not the liability of any other district than the particular school district which used the roofing material purchased." And again, "There is no dispute that the roofing material so sold was to be used only in the repair of a

school building, or buildings in a particular district, or districts."

The absence of any evidence as to where the materials were used or purchased to be used is what causes the trouble in this law suit. The trial court in the mandamus proceeding said: "If this is not a charge against the whole of the districts but only against the districts where used, the court, not knowing where it was used, cannot determine whether it was within the revenues or not, or whether any funds were diverted wrongfully from this fund or not. The defense being affirmative and the respondent having shown nothing by which the court could find upon these important facts, it must necessarily fail and the mandamus will be granted as prayed for."

Another fault with the present prevailing opinion, as I view it, is the assumption that the county school board is not a county board and does not represent the county and the taxpayers thereof. The opinion states that the county board of education is the agent of the several rural districts to purchase materials. I think the matter will be better understood and the functions and powers of the county board of education be better appraised if we recall that the Constitution of New Mexico provides for a system of free public schools sufficient for the education of all the children of school age in the state and commands the Legislature to provide for such a system. The Constitution and the laws enacted by the Legislature provide by taxation and otherwise for a general and uniform system of public schools and to accomplish this end, the state has been divided into a convenient number of districts in which one or more public schools shall be maintained.

It cannot be too often emphasized that the controlling purpose of the people of New Mexico, as declared in their Constitution, is that a state system of public schools shall be established and maintained—a system of schools supported by the state. To carry out this purpose the Legislature has authorized and directed the respective counties of the state, as administrative units of the public school system, or as governmental agencies employed for that purpose by the General Assembly, to provide the money for such expense by taxation or otherwise. In furtherance of this purpose the Legislature provided that the district judge of each district shall appoint "in each county of his district" the members of the county school boards of education, "one from each commissioners' district and one from the county at large." It is also provided that the fifth member of the county board of education shall be the county school superintendent.

It was provided that the county board of education, except with respect to independent and union high school districts, shall have supervision and control of all rural schools and districts, and of sites, buildings, equipment and funds of said districts, etc. It is further provided that the county board of education may employ a rural school supervisor at the expense of the county,

which supervisor shall be nominated by the county superintendent of schools and must be approved by the state board of education. These provisions show the interrelation between the state board of education, the county superintendent and the county board of education. A large discretion is given the county board of education in the direction and supervision of the school system. As we have seen, the county board of education has the control and supervision of rural schools, buildings, equipment and funds of rural school districts. 1941 Comp. Sec. 55-807. This, and other sections, give the county board of education the right to purchase supplies. The boards of school directors of the rural school districts have no right to purchase materials and supplies of any kind except when constituted the agent of the county board of education for that purpose. Code 1941, 55-808. The county board of education is given the power to sue and to be sued and to acquire and dispose of school property. Nowhere in the School Code is it provided that rural school districts or the directors thereof may sue or be sued.

It is my view that the foregoing and other provisions of the School Code constitute the county school board a distinct corporation as a part of the state-wide system of education, maintaining a relationship to the state, county and rural districts as administrative units of the public school system.

Primarily, as its name indicates, the county board of education is a county board. Circumstances may arise as where munici-

pal districts, independent districts, and union high school districts may be organized which may also vest directors of these districts with certain powers which may overlap or even curtail the administrative functions of the county board of education. But the county board of education nevertheless primarily has powers territorially co-extensive with the county. It happens that so far as Sandoval County is concerned, none of the authority of the county board of education has been diminished. It is a matter of common knowledge, of which we should take judicial notice, that there are no municipal, independent or union high school districts in that county, it being composed entirely of rural school districts.

I think we should inquire who the materialman has the right to do business with in furnishing materials that may be used for the repair of rural school houses. Manifestly, he deals with the county board of education, which alone may become obligated and which alone may be sued.

Suppose a county were visited with a severe wind and hail storm that damaged fifteen rural district school houses and the county board of education bought a carload of roofing material from one of our merchants with the economical intention of spreading the material around. Who is the debtor, the county board of education, or are there various districts in which the materials in varying quantities may be used the debtors? I do not hesitate to say that the county school board is the sole debtor.

To carry the illustration further, suppose after the county board of education had bought the carload of repair materials it was destroyed by fire before being used. Must the merchant go unpaid because the material was not used on school houses? I think not.

The majority have not added any weight to their opinion by the citation of United States ex rel. Huidekoper v. Macon County, 99 U.S. 582, 25 L.Ed. 331, and United States v. County Court of Knox County, 122 U.S. 306, 7 S.Ct. 1171, 30 L.Ed. 1152.

The first of these cases was the supporting authority employed in Atchison, T. & S. F. R. Co. v. Territory, 11 N.M. 669, 72 P. 14, and as shown by the original opinion I have quoted, these decisions are not controlling in the case at bar. The respondents fail because they are not able to show that the doctrine of these cases fits the case at bar. I think the doctrine of State ex rel. Chesher v. Beall and Landers v. Board of Education, quoted and cited in the original opinion, are of equal if not of greater force than when applied to an alleged obstacle of the Bateman Act. With respect to the violation of the Bateman Act, the party contracting has fair warning before he enters into the contract as to the fiscal situation of the entity with which he contracts. He is told by the statute that his contracts running counter to the provisions of the Bateman Act will be void. The Budget Law contains merely a directive to the fiscal agents of the government as to what subdivisions the repair expense shall be charged against. There is no declaration that to do it some other way will render the contracts of purchase from the materialman void if the overall manager of the rural school system (county board of education) fails to charge the amount due for the material to the proper district. There are provisions in the School Code which indicate that if any school officer violates the directives contained in the budget provisions he may be made to bear certain pains and penalties, but there is no declaration to the effect that failure of the officers having charge of the budget to comply with the directives shall render void the contracts of purchase of materials which the county board of education has entered into.

The Supreme Court of Appeals, Fifth Circuit, in Mayor, Etc., of City of New Orleans v. United States ex rel. Gaines' Adm'r, 49 F. 40, 42, 1 C.C.A. 148, 2 U.S.App. 125, considering a statute similar to the Bateman Act said: "It certainly cannot be contended that the act of 1877 was intended to invalidate a debt which was just and legal when incurred, on account of a misappropriation of funds from which it should have been paid."

In State ex rel. Martin v. Harris, 45 N.M. 335, 115 P.2d 80, we reached somewhat the same conclusion in considering the Bateman Act.

Likewise, I think it cannot be contended that the budgetary provisions of the School Code were intended by the Legislature to invalidate a debt that was just and legal when incurred, on account of the tortious

acts of the school officers in failing or refusing to obey the directors of such budgetary provisions.

It seems intolerable that the county board of education and other school officers who are the agents of the law and of the taxpayers could by fraud or negligent inattention to their duties destroy the liability to respond to a just and valid obligation.

This would be allowing public administration to profit by its own wrong. Cf. Shaw v. Board of Education, 38 N.M. 298, 31 P.2d 993, 93 A.L.R. 432.

I adhere to the decision of July 13, 1943.

SADLER, C. J., concurs.