Charles R. MARTINEZ,
Plaintiff-Appellant,
Cross-Appellee,

v.

The BOARD OF EDUCATION OF the TAOS MUNICIPAL SCHOOL DISTRICT and Members Tina V. Martinez, Gabriel Chavez, Alex Medina and Arsenio Cordova, individually and as members of said Board, Defendants-Appellees, Cross-Appellants.

Nos. 83–1680, 83–1764.

United States Court of Appeals,
Tenth Circuit.

Nov. 21, 1984.

Michael D. Bustamante, Ortega & Snead, P.A., Albuquerque, N.M., for plaintiff-appellant, cross-appellee.

Daniel H. Friedman, Simons, Cuddy & Friedman, Santa Fe, N.M. (C. Emery Cuddy, Jr., Santa Fe, N.M., with him on brief), for defendants-appellees, cross-appellants.

Before HOLLOWAY, Chief Judge, and SETH and BARRETT, Circuit Judges.

---

**2.** 28 U.S.C. § 1631 provides:

SETH, Circuit Judge.

This is an action for damages against a local school board and against members in their individual and official capacities. Plaintiff asserts that he was terminated as Superintendent because of his "real or imagined" political activities in the school board election.

Before trial defendants moved to have the Board and individuals in their official capacities dismissed under the Eleventh Amendment. The motion was granted. The trial proceeded on the First Amendment and the conspiracy count against the four Board members in their individual capacities only. The jury returned special interrogatories that plaintiff's political conduct was not a substantial or motivating factor in defendants' decision not to reemploy plaintiff. The verdict was against plaintiff.

This appeal by plaintiff is directed to the Eleventh Amendment issue and to jury instructions. The defendants have cross-appealed on the issue as to whether plaintiff was a policy maker (*Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574), and on good faith immunity (*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396).

On the Eleventh Amendment issue and the autonomy and who pays the judgment issue, the attorney for the plaintiff acknowledged in his brief and at argument that the judgment there sought would be paid by state funds and handled by the Risk Management Division of state government (§ 41–4–20(A)(2)). The Division uses the state public liability fund which receives appropriations from the legislature and insures some risks.

Plaintiff argues in substance that the source of funds used to pay judgments should not be used in an Eleventh Amendment analysis or should not be a substantial element. He urges that *Mt. Healthy City Board of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471, and an examination of the Ohio statutes there considered permit this conclusion as does our *Unified School District No. 480 v. Epperson*, 583 F.2d 1118 (10th Cir.).

On the autonomy issue it is necessary to consider the relationship between the local school boards or districts and the state government. New Mexico from the outset has taken an extreme position on the responsibility of state government for the local school systems both as to administration and finances.

Thus the relation was established by the state constitution. Article XII, § 6, after creating a state department and state board of education and after stating that the state board "shall determine public school policy," provides that the state board:

"shall have control, management and direction of all public schools, pursuant to authority and powers provided by law."

It is difficult to conceive of broader powers in the state board than having "control, management and direction" of all public schools. This has to be well beyond the "some guidance" referred to in *Mt. Healthy City Board of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471.

The constitutional powers of the state board were particularized by the legislature by the Session Laws of 1923. These were carried forward in the 1929, 1941 and 1953 compilations. The duties were again codified in 1953 and then entitled the Public School Code. This basically became what is now § 22–1–1 and following of the New Mexico Statutes (1978). Thus the state board's powers are of long standing. In the 1978 statutes, in subsections A to X of § 22–2–2, the duties of the state board are listed. Some are as follows:

"E. designate courses of instruction to be taught in all public schools in the state;

. . . .

"G. determine the qualifications for ... any person teaching ... or administering in public schools according to law ... a system of classification adopted ... by the state board;

"H. suspend or revoke a certificate held by a ... instructor or administrator according to law for incompetency, immo-

rality or for any other good and just cause;

. . . .

"J. prescribe courses of instruction, requirements for graduation and standards for all public schools . . .;

"K. adopt regulations for the administration of all public schools . . . ;

. . . .

"O. accept and receive all grants of money from the federal government . . . and disburse the money . . .;

. . . .

"V. provide for management . . . to operate any public school or school district which has failed to meet requirements of law, state board standards or state board regulations . . . ."

Some of these enumerated powers were in the Ohio statute considered in *Mt. Healthy,* but they were not in the context of the state board's "control, management and direction."

As indicated, the state board can operate districts which do not conform to the board's regulations and ·standards. The board or the state superintendent can suspend such a local board, and is required to do so. No prior hearing is required. This has been done on a number of recent occasions.

There exists with the above State Board of Education control a separate system of pervasive financial control over all school districts exercised by a different state agency. Thus as to budgets, the control appears to be complete. The Public School Finance Act (N.M.Stat.Ann. § 22–8–1 (1978)) provides that the New Mexico Department of Finance and Administration (which contains an Office of Education) shall conduct budget making with the local board. The budget so drafted is then submitted to the Department for its unrestricted consideration. The budget must be there certified to be valid. The statute provides that no expenditure can be made by a school district unless it is in accordance with the budget certified by the Department.

The Public School Finance Act also provides that the districts or boards cannot

hold funds unless specifically permitted to do so by the state. If not so permitted, the County Treasurer holds and disburses the funds (§ 22–8–37).

The statutes provide each school budget *must* contain one of three methods to meet judgments obtained in civil rights actions. The three methods are: (1) establish reserves out of budgeted funds; (2) buy commercial insurance coverage; (3) participate in the New Mexico public liability fund.

Section 41–4–20 provides that the Department of Finance and Administration is prohibited from approving any school district budget which does not budget for the risk of civil rights judgments. This statutory provision is very significant on the particular issue here concerned.

The state control over budgets is complete because the budgeting is *of state funds* distributed to the schools. In the 1982–1983 school year 96% of the school district funds statewide were provided by the state. The small amount of "local funds" comes mostly from a share in motor vehicle fees collected by the state and distributed to the counties. In a companion case the record shows that state funds provided 98.8% of the last school budget in Mora County.

It would seem that the statutory requirement that the budget *must* contain provision for civil rights judgments and stated methods is important in itself and also recognizes that § 7–37–7 C(3) providing for a tax levy to pay certain judgments is not intended to refer to judgments obtained for violation of constitutional rights. The New Mexico Supreme Court in *Wells v. County of Valencia,* 98 N.M. 3, 644 P.2d 517, made the distinction between torts and violations of constitutional rights and held that the Tort Claims Act (§ 41–4–1 et seq.) was the exclusive remedy only for torts.

Article VIII, Section 7, of the New Mexico Constitution, refers to execution on judgments and to a levy. This was held not self-executing in *McAtee v. Gutierrez,* 48 N.M. 100, 146 P.2d 315. The implementing statute is 7–37–7 C(3).

This court recently held en banc that the New Mexico statutes of limitation govern-

ing tort actions did not apply to suits for violations of constitutional rights. *See Garcia v. Wilson*, 731 F.2d 640 (10th Cir.). We also held in *Wise v. Bravo*, 666 F.2d 1328 (10th Cir.), that suits for violations of federal constitutional rights are not tort actions.

Bonding for capital improvements is a significant aspect of an effective educational system. The initial decision to provide for such improvements is with the local boards. There is, however, a greater or lesser degree of state control and the exercise of the right to approve or not with the state depending on the type of bonds proposed. This local authority is perhaps related to the fact that the boards are elected, but in any event, these two factors are the most important of a local nature. However, they are overwhelmed by the pervasive state authority over education in the state originating with the state constitution.

The authority of the districts to act must be examined in the overall control exercised by the state. Thus, for example, the districts can acquire and dispose of property, but the acquisition must be within the fiscal and bonding control. Improvements in most instances must be approved, and, if substantial, state approval of plans and specifications must be obtained. The district may dispose of property, but this is subject to state approval (§ 13–6–2).

In *Unified School District No. 480 v. Epperson*, 583 F.2d 1118 (10th Cir.), we said "the powers, nature, and characteristics of the board or agency must be critically examined under state law" to determine whether the entity is an arm of the state under the Eleventh Amendment. There, we also distinguished *Brennan v. University of Kansas*, 451 F.2d 1287 (10th Cir.), because the state board had "control" over the University in addition to "supervision." We there referred to *Harris v. Tooele County School District*, 471 F.2d 218 (10th Cir.), as to the source of funds to pay a judgment. We there decided under Utah law that the school district was an element of state government. In *Epperson* it was stipulated that the funds to pay the judgment would come from local funds.

The United States District Court for the District of New Mexico decided in *Naranjo v. Espanola School Board*, N.M. No. 82–916(JB) (March 30, 1983), in *Cockrell v. Curtis*, N.M. No. 83–0031(JB), and in the several cases herein considered that § 1983 judgments against school boards or districts would be paid out of state funds and the control was such that they were for these purposes arms of the state. Judgments sought against the Mora or Taos school districts, officials and members would be paid out of state funds. The New Mexico Tort Claims Act (§ 41–4–1 et seq.) requires the budgeting, above described, to meet this risk. Under the requirements the budgeted funds are state funds. The Risk Management Division would handle any payments.

Considering that the New Mexico State Board of Education has the "control," the "management" and "direction" of all public schools; that this authority has been implemented by the legislature in detail; that the fiscal-budgetary matters for the districts are fully controlled by the state; that the state taxing method for schools is a statewide system of state taxes; that the funds so generated for the schools are applied on a formula to equalize funding among the districts and basically on school attendance, we must hold that the local boards are indeed arms of the state system of education as provided in the state constitution. The local boards, of course, do perform significant functions as an arm of the state government and the members make a very important contribution to the educational system.

The plaintiff Martinez and the Board as cross-appellant raise other issues which need not be considered. We conclude that the instructions given the jury were a proper statement of the law and presented the theories of the parties.

AFFIRMED.