724 F.Supp. 857 (1989)
Nancy MARTINEZ, Plaintiff,
v.
BOARD OF EDUCATION OF EMERY COUNTY SCHOOL DISTRICT, Defendant.
Civ. No. 89-C-447A.
United States District Court, D. Utah, C.D.
November 14, 1989.
*858 Stephen L. Henriod and Richard M. Hymas, Salt Lake City, Utah, for plaintiff.
R. Paul Van Dam, Atty. Gen., and Reed M. Stringham, III, Asst. Atty. Gen., Salt Lake City, Utah, for defendant.

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

I. INTRODUCTION
ALDON J. ANDERSON, Senior District Judge.
This case involves the alleged wrongful termination of the plaintiff as an assistant basketball and volleyball coach for Emery County High School. Although plaintiff pleaded seven different legal counts in her complaint, the essence of her complaint is that the defendant school board discriminated against her and that she was wrongfully discharged from her coaching job.
The defendant filed a motion for partial summary judgment arguing that the Eleventh Amendment to the United States Constitution and the Utah Governmental Immunity Act bar several of plaintiff's causes of action. Following a hearing on the motion held on August 7, 1989, the Court took the matter under advisement. After reading the parties' memoranda and studying the relevant law, the Court is now prepared to issue its ruling. For reasons better articulated below, the Court holds that counts five, six, and seven of the plaintiff's complaint are barred by the Eleventh Amendment.[1] This determination makes it unnecessary for the Court to address the defendant's second argument concerning state governmental immunity.

II. BACKGROUND FACTS
In 1986, the plaintiff was contacted by Emery County High School and offered a position as a teacher and as head volleyball and assistant basketball coach of the girl's athletic teams at Emery County High School. At the time she received this offer, apparently she was also considering another offer from a California school. Plaintiff accepted the Emery County job and turned down the California position. When she returned to Emery County to sign her employment contract, the plaintiff was informed that the school had mistakenly informed her of the position that was available, and that the head volleyball coaching job had been given to a man, Kent Bunderson. However, she was offered the job as assistant coach of both the volleyball and basketball teams which she accepted. The plaintiff served in these positions during the 1986-87 school year and for the first part of the 1987-88 school year.
In November, 1987, the plaintiff was terminated from her assistant coaching positions *859 by the head coach, Mr. Bunderson.[2] She claims that she was terminated from these positions because she is a woman, and she also alleges that Mr. Bunderson discriminated against her during the time she served as assistant coach because she is a woman.
Plaintiff filed this action against the Board of Education of Emery County School District ("Emery County Board") alleging various causes of action. Counts I and II of the complaint allege sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, 2000e-3, count III alleges wrongful termination, count IV asserts that the defendant intentionally inflicted emotional distress on the plaintiff, count V claims the discharge was contrary to public policy, count VI raises the claim of breach of implied or express contracts, and, finally, in count VII the plaintiff claims that the defendant breached its implied covenant of good faith and fair dealing. For these violations, the plaintiff prays for reinstatement as well as damages.

III. ANALYSIS
Unlike most motions for summary judgment, there is little dispute here as to the facts. The defendant school board does not deny that the plaintiff was in fact relieved of her coaching assignments. See Defendant's Memorandum Supporting Motion for Partial Summary Judgment at 2. Apparently, then, the only factual dispute is whether the plaintiff was discriminated against, or whether the defendant terminated the plaintiff in violation of some duty owed the plaintiff.
The defendant petitions this court to grant partial summary judgment in its favor. Specifically, the defendant argues that the plaintiff's pendent state law claims (counts five, six, and seven) are barred because the Emery County Board enjoys Eleventh Amendment immunity. Thus, the issue presently before the Court is almost entirely legal, and virtually unrelated to the facts relied on by the plaintiff. Notwithstanding the character of this motion, however, the defendant still has the burden of demonstrating that no genuine issue as to any material fact exists and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); see also Ewing v. Amoco Oil Co., 823 F.2d 1432, 1437 (10th Cir. 1987) (setting for the moving party's burden of proof in a summary judgment motion).
The Eleventh Amendment to the United States Constitution states that
The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
U.S. Const. amend. XI. Although the literal language of this amendment does not prohibit suit against a state by a citizen of the same state, in Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), the Supreme Court held that a federal court could not entertain a suit brought by a citizen against that citizen's own state.[3]Hans is not directly applicable here as the State of Utah is not a named defendant. However, the doctrine articulated in Hans has been extended to include certain state agencies where the agency is merely an "arm of the state." Mt. Healthy City *860 Board of Educ. v. Doyle, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977).
On the other hand, the bar of the Eleventh Amendment does not extend to all state governmental entities. For example, Eleventh Amendment immunity is not available to counties and similar municipal corporations. Id. at 280, 97 S.Ct. at 572 citing Lincoln County v. Luning, 133 U.S. 529, 530, 10 S.Ct. 363, 363, 33 L.Ed. 766 (1890). Thus, the issue in this case comes down to "whether the [Emery County Board] is to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend." Id.
In Harris v. Tooele County School District, 471 F.2d 218 (10th Cir.1973), the Tenth Circuit held that Utah school districts qualify for Eleventh Amendment immunity. Although Harris is directly on point, the plaintiff argues that the Supreme Court's opinion in Mt. Healthy and later decisions of the Tenth Circuit point to the opposite result.
Mt. Healthy involved a suit against an Ohio board of education by a teacher who was denied renewal of his employment contract. In the course of its opinion, the Supreme Court held, looking at Ohio law, that the defendant Ohio school board "is more like a county or city than it is like an arm of the State," and refused to grant the school board Eleventh Amendment immunity from suits in the federal courts. Mt. Healthy, 429 U.S. at 280, 97 S.Ct. at 572. Looking at the Ohio statutory structure for school boards, the Supreme Court found important the fact that the Ohio governmental immunity act defined school districts as a political subdivision, not as the "State." Id. (citation omitted). The Court also noted that, although the State Board of Education exercised some guidance over school districts in Ohio, and that school districts receive a "significant amount of money from the State," other powers of the Ohio school boards such as the power to issue bonds and levy taxes pointed to the conclusion that the school board was not entitled to immunity. Id.
The Tenth Circuit, in 1978, after Mt. Healthy was decided, held that school districts in Kansas are not entitled to Eleventh Amendment immunity. Unified School Dist. No. 480 v. Epperson, 583 F.2d 1118 (10th Cir.1978). In that case the court set forth two tests for determining whether a state entity is an alter ego of the state, thereby entitled to partake in the state's Eleventh Amendment immunity.
Two primary tests for distinguishing alter egos, enjoying the state's Eleventh Amendment immunity, from so-called political subdivisions, such as counties and municipalities, which do not enjoy such immunity are: (1) To what extent does the board, although carrying out a state mission, function with substantial autonomy from the state government and, (2) to what extent is the agency financed independently of the state treasury.
Id. at 1121-22 (citations omitted).
Application of the first of these tests requires the Court to look at Utah's governmental structure. Utah's structure as to school districts and boards is, in some respects, similar to the Ohio structure discussed in Mt. Healthy.[4] First, like Ohio, Utah defines school districts as political subdivisions for purposes of its governmental immunity act. Utah Code Ann. § 63-30-2(2)(1986).[5] The Harris court recognized this point but held that it was not controlling. Instead the circuit court felt that the governmental immunity act "has one purpose, to waive the defense of sovereign immunity; it does not restructure Utah's governmental structure." Harris, 471 F.2d at 220-21.
*861 Utah school districts, like Ohio's, also have the ability to issue bonds, see Utah Code Ann. § 53A-18-103 (1986) (consolidated county school districts may issue bonds to fund, purchase, or redeem the district's outstanding indebtedness), and to levy taxes within certain limitations. See, e.g., id. § 53A-16-104 (1989 & Supp.1989) (a local school board may levy a tax not to exceed .0020 per dollar of taxable value for debt service and capital outlay).
Notwithstanding these similarities with Ohio law, however, the Court is persuaded that local school boards in Utah function with less autonomy from the state than did the entities in question in both Mt. Healthy and Epperson. In Epperson the Tenth Circuit pointed out that Kansas school boards are subject to "general supervision" from the Kansas State Board of Education, Epperson, 583 F.2d at 1123, and in Mt. Healthy the local school board was subject to "some guidance" from the Ohio State Board of Education. Mt. Healthy, 429 U.S. at 280, 97 S.Ct. at 572. By contrast, the Tenth Circuit, in a case that examined the New Mexico school system for Eleventh Amendment purposes, referred to Mt. Healthy but still held that a New Mexico board of education was an arm of the state and immune from suit. Martinez v. Board of Educ., 748 F.2d 1393 (10th Cir.1984). Crucial to the Martinez court's decision was the fact that the New Mexico State Board of Education had "control, management and direction of all public schools." Id. at 1394.
Similar to New Mexico's constitutional and statutory education scheme, Utah's structure for public schools dictates broad state control. The Utah Constitution requires the Utah legislature to provide "for the establishment and maintenance of the state's education system." Utah Const. art. X, § 1. More important to the present case, the Constitution vests "general control and supervision of the public education system" in the State Board of Education. Id. § 3 (emphasis added); see also Utah Code Ann. § 53A-1-401 (1989) (restating the State Board of Education's control over public schools). This distinction is not merely semantical either. Using this broad control, the State of Utah can cut off aid to districts that do not comply with state board policies, Utah Code Ann. § 53A-1-401(3) (1989), and also determine and enforce program standards, personnel qualifications, health and safety standards, and school design requirements. Id. § 53A-1-402. Neither Mt. Healthy or Epperson involved a state authority with such extensive control. The control that the state exercises over local school boards points to the conclusion that local school boards in Utah should receive the immunity afforded to the state itself under the Eleventh Amendment.[6]
Analysis under the second test discussed in Epperson also supports the view that Utah school boards are immune from suit in federal court. Epperson's second test looks to the financing of school districts; if the district is financed by the state, this factor suggests that the school district is merely an arm of the state.
School boards and districts in Utah are not financed independently of the state legislature. This was true when Harris was decided and remains the case today. See Harris, 471 F.2d at 220 ("Under Utah law [the] cost of operating and maintaining school programs is divided between the state and the school districts."). The parties have stipulated that between sixteen and nineteen-percent of the Emery School District's yearly budget comes directly from the State Board of Education. In addition, local school districts are required by the state to impose a "minimum basic tax," Utah Code Ann. § 53A-17-103(3) *862 (Supp.1989), to help the state fulfill its constitutional duty "to provide a minimum school program for the state." Id. § 53A-17-102(1) (1989); see generally The Minimum School Finance Act, Utah Code Ann. §§ 53A-17-101 to 53A-17-119 (1989 & Supp.1989). The proceeds from this tax are used to fund the school programs in each district. Utah Code Ann. § 53A-17-105(1)(a) (1989). If this tax is not sufficient to provide for the school district's programs, the state must contribute the balance of the total costs. Id. § 53A-17-105(1)(c). On the other hand, any surplus that the district receives from this tax is paid back to the state, into the Uniform School Fund. Id. § 53A-17-106(3) (Supp.1989).
What is important to note about this funding structure is that the state exercises considerable authority, some direct and some indirect, to fund education in Utah. Although the state has enlisted the help of local school districts as a matter of institutional and administrative choice, the state nevertheless contributes to, and oversees, the funding of Utah public schools. Not only is the funding structure relevant to the second Epperson test, but referring back to the first test discussed above, this funding structure is further evidence that the state and the local school districts are not autonomous one from another, but are instead interrelated parts in the machinery of state government.
Another point concerning state finances suggests that boards of education in Utah are arms of the state. The Epperson court wrote that "if the money judgment sought to be entered against a board or agency will be satisfied out of the state treasury, then the board is immune from suit under the Eleventh Amendment." Epperson, 583 F.2d at 1122 citing Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Earlier, the Harris court recognized the relationship that satisfaction of a judgment has to the immunity issue:
When it is apparent a judgment against a political subdivision will ultimately reduce state funds, the action is in essence one for recovery of money from the state. "[T]he state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit."
Harris, 471 F.2d at 220 quoting Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). Moreover, the Tenth Circuit reaffirmed Harris in Epperson noting that "an influencing factor in [Harris] was the possibility that a money judgment rendered in federal court against the school district might be paid, at least partially, out of state funds." Epperson, 583 F.2d at 1123 (emphasis added). This fact has not changed since Harris was decided.
If the plaintiff succeeded in this action, the defendant school board would satisfy the judgment with money from the Utah Risk Management Fund. See Utah Code Ann. § 63-1-47 (1986); see also Martinez, 748 F.2d at 1393, 1396 (a judgment in that case would have been paid out of a state fund similar to Utah's). The fund consists of direct appropriations from the legislature and indirect appropriations  premiums paid by various state agencies, including school districts who participate in the fund. Id. §§ 63-1-47, 63-1-50. These premiums, payment of which allows school districts to participate in the fund,[7] come indirectly from the legislature. The legislature appropriates money to the school district and the school district then pays the premium. See discussion infra. Consequently, the state is in fact paying all or part of the school district's premium. Consistent with what the Tenth Circuit found persuasive in both Harris and Epperson, therefore, the possibility still exists that a judgment in this case would be paid, at least partially, out of state funds.[8]
*863 In conclusion, the Court is of the opinion that Harris is still good law. The Court accordingly holds that, as a matter of law, the Emery County Board is an arm of the State of Utah entitled to partake in Utah's Eleventh Amendment immunity, and that, therefore, the Board is immune from suit in federal court.[9] The defendant's motion for partial summary judgment is granted. Counts five, six, and seven of the plaintiff's complaint are dismissed with prejudice.
IT IS SO ORDERED.
NOTES
[1] The defendant also moved for partial summary judgment as to counts three and four of the plaintiff's complaint. Although these counts would be precluded by the Eleventh Amendment, in her Memorandum in Opposition to this motion, the plaintiff conceded that her third and fourth claims for relief are barred by Utah's governmental immunity act, and she agreed to dismiss these claims. Plaintiff's Memorandum in Opposition to Defendant's Motion for Partial Summary Judgment at 7. In light of this admission, the plaintiff is hereby ordered to draft an order for the Court's signature dismissing counts three and four with prejudice.
[2] Apparently, the plaintiff continued to teach academic classes at the high school.
[3] The doctrine articulated in Hans is not absolute, however, as at least two ancillary doctrines limit its reach. First, a state can consent to suit in federal court if that consent is "unequivocally expressed." Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984) citing Edelman v. Jordan, 415 U.S. 651, 673, 94 S.Ct. 1347, 1360, 39 L.Ed.2d 662 (1974). Second, and more germane to the present case, the Fourteenth Amendment limits the Eleventh Amendment and the principle of sovereign immunity. See Fitzpatrick v. Bitzer, 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976). As the defendant has conceded, application of this second principle leads to the conclusion that the plaintiff's first and second claims are not affected by the Eleventh Amendment as the Civil Rights Act of 1964 was promulgated in part under the Fourteenth Amendment. Id. However, the Eleventh Amendment may preclude plaintiff's other causes of action.
[4] Utah's structure is also similar in several respects to the Kansas structure discussed in Ep-person.
[5] However, as noted infra in footnote 9, another section of the Utah Code defines school districts as agencies of the state. See Utah Code Ann. § 63-1-50(3) (1986). This demonstrates that Utah's governmental structure is different than Ohio's or Kansas's, and deemphasizes the importance placed on the definition of school districts as political subdivisions.
[6] Another point that also supports this conclusion is the fact that state decisional law in Utah regards school boards as arms of the state. See, e.g., Bingham v. Board of Educ., 118 Utah 582, 223 P.2d 432, 435-36 (1950) ("school boards are created exclusively for school purposes and are mere agencies of the state established for the sole purpose of administering a system of public education"); Campbell v. Pack, 15 Utah 2d 161, 389 P.2d 464 (1964) (reaffirming the rule decided in Bingham). Although these cases were decided in the context of state sovereign immunity, they shed light as to the organizational structure of governmental entities in Utah and are relevant here.
[7] The fact that school districts have the option of participating in the fund does not change the conclusion the Court reaches today. Instead it merely suggests an administrative decision to allow school districts some autonomy, which the legislature apparently favors.
[8] Interestingly, § 63-1-50, which allows public school districts to participate in the Risk Management Fund, states that "[e]ach participating public school district shall be treated as a state agency when participating in the state Risk Management Fund." Utah Code Ann. § 63-1-50 (1986).
[9] Judge Winder recently held that another school board in Utah is immune from suit under the Eleventh Amendment. Partridge v. Board of Education, Sevier County School District, 88-C-1055W (Winder, J., Sept. 14, 1989 order).